UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>*ex rel.*<br><br>TANJA ADAMS, KIANNA CURTIS, MINDY ROBERTS, ASHLEY SEGARS, and TAMARA WILLIFORD,<br><br>*Plaintiffs-Relators*,<br><br>v.<br><br>REMAIN AT HOME SENIOR CARE, LLC, NUCLEAR WORKERS INSTITUTE OF AMERICA, BRIAN CARRIGAN, TIM COLLINS, DAWN BLACKWELL, DR. FRANCIS JENKINS, II, FHJ, LLC, DR. PETER FRANKS, AND A.J. FRANKS,<br><br>*Defendants*. | 1:17-01493-JMC<br><br>Case No. _____<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT**<br><br>**Filed Under Seal pursuant to the False Claims Act, 31 U.S.C. §§ 3729(a)(a)(A), 3729(a)(1)(C) and 3730(h)**<br><br>**FILED UNDER SEAL** |

## I.     INTRODUCTION

1.     Defendants worked together to defraud the United States by the following means: (1) fraudulently recruiting patients to participate in the DOL's DEEOIC[1] program;

---

[1] Congress passed the Energy Employees Occupational Illness Compensation Program Act (EEOICPA) 42 U.S.C. § 7384 *et seq.*  The DOL designates the portion of the Act

2

(2) fraudulently providing letters of medical necessity so that patients can receive benefits under the Act which were not medically necessary; (3) forging signatures on renewal letters of medical necessity; (4) fraudulently inducing impairment ratings; (5) receiving kickbacks and paying kickbacks for patient referrals; (6) providing illegal payment and gifts to patients in the program; (7) hiring unqualified patient relatives as home health care providers and billing the DOL; (8) billing the DOL for RN or LPN services when services were actually provided by a CAN; (9) billing the DOL for services not medically necessary, and/or; (10) billing the DOL for services not rendered. Each allegation is more fully set out herein.

2. Relators are all nurses who work or worked for Defendant Remain at Home Senior Care, LLC (RAH) and also represented Defendant Nuclear Workers Institute of America (NWIA) at various functions.

3. Each Relator has suffered employment retaliation because of their efforts to stop Defendants' continued violations of the False Claims Act, 31 U.S.C. §§ 3729-3733.

## II.     JURISDICTION AND VENUE

4. Relators brings this action on behalf of themselves and the United States, for violations of the federal False Claims Act, 31 U.S.C. §§ 3729-3733, seeking damages in connection with violations of 31 U.S.C. §§ 3729-3733.

5. Relators provided a copy of the Complaint, a written disclosure, and material information to the United States prior to the filing of this Complaint.

---

applicable to Department of Energy employees "Division of Energy Employees Occupational Illness Compensation" (DEEOIC).

6.     This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732 and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b).

7.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants can be found in and transact business in this district. In addition, many acts prohibited by 31 U.S.C. § 3729 occurred in this district. 31 U.S.C. § 3732(a).

8.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this district and numerous acts proscribed by 31 U.S.C. § 3729 occurred in this district. Almost all[2] of the beneficiaries recruited and home health care providers reside in the district. Relators' claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the government is already a party, or in a congressional, government accountability office, or other federal report, hearing, audit, or investigation, or from the news media, as enumerated in 31 U.S.C. § 3730(e)(4)(a).

9.     To the extent there has been a public disclosure unknown to the Relators, the Relators are the "original source" under 31 U.S.C. § 3730(e)(4)(b). Relators have direct and independent material knowledge of the information on which the allegations are based and have voluntarily provided the information to all of the United States before filing this *qui tam* action based on that information. *Id.*

10.    Defendants worked together to defraud the United States by (1) fraudulently recruiting patients to participate in the DOL's DEEOIC program; (2) fraudulently

---

[2] Of the 56 RAH patients as of April 30, 2017, 52 resided in South Carolina, 3 resided in Georgia, and 1 resided in Florida. (*See* **Exhibit A**.)

providing letters of medical necessity so that patients can receive benefits under the act which were not medically necessary; (3) forging signatures on renewal letters of medical necessity; (4) fraudulently inducing impairment ratings which were not legitimate; (5) receiving kickbacks and paying kickbacks for patient referrals; (6) providing illegal payment and gifts to patients in the program; (7) hiring unqualified patient relatives as home health care providers and billing the DOL; (8) billing the DOL for RN or LPN services when services were actually provided by a CNA; (9) billing the DOL for services not medically necessary; and/or (10) billing the DOL for services not rendered. Each allegation will be more fully set out herein.

### III. PARTIES

#### A. Plaintiffs

11.     Plaintiff-relators are licensed nurses either currently or formerly employed by Defendant RAH.  They each have personal knowledge about RAH's and NWIA's fraudulent activities.  Each has suffered retaliation because of their complaints to RAH and/or NWIA regarding their fraudulent activity.

12.     31 U.S.C. section 3730(h) provides relief to employees who are "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms of employment because of lawful action done by the employee or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations" of the False Claims Act.

13.     Plaintiff-relators were retaliated and/or discriminated against by one or more Defendants as follows:

a. **TANJA ADAMS** – Tanja Adams, RN, was hired as a case manager in August 2016 by RAH. She supervised the provision of home health nursing via RAH for four patients, initially. RAH directed her to chart hours for a patient (Exhibit A, Client 39) before Adams had even seen the patient, and she had nothing to chart. RAH also directed her to chart hours on a patient (Exhibit A, Client 8) who was in the hospital and who Adams had not seen all week. RAH directed Adams to charge the DOL for more nursing time than she provided. RAH also instructed Adams to chart for time she spent with patients by telephone rather than in-person. RAH has also directed her to take its patients to re-certification exams by their treating physicians. At one such appointment, the treating physician confronted Adams, questioned why RAH was providing his patient (Exhibit A, Client 55) with benefits; the treating physician told Adams that he had never signed the original medical necessity letter for EEOICPA benefits – even though RAH records showed he had. RAH also directed Adams to chart for patients visits she could not make while on an upcoming maternity leave. A RAH manager told her "he paid her not to do shit." In other words, she was paid for hours charted and not for hours worked. When Adams objected to RAH's illegal practices, RAH stopped giving Adams additional case management assignments. RAH management has also subjected Adams to a hostile work environment, harassing

her and threatening termination of employment twice, because she objected to charting unworked hours.

b. **KIANNA CURTIS** – Kianna Curtis, RN, currently serves as a case manager for RAH. RAH hired her in July 2016. RAH promoted her to lead case manager and then demoted her after she objected to RAH's illegal practices. RAH directed Curtis to charge the DOL for more nursing time than she provided or the staff she supervised provided. RAH also instructed Curtis to chart for time she spent with patients by telephone rather than in-person and to charge for on-call, telephone time, research time, travel time, etc. She is aware of the kickback scheme. She is also aware of the sustained effort to reward patients and their families for choosing or staying with RAH. As part of its program, RAH gets family members paid for what they already do, take care of their loved one. When Curtis objected to RAH's illegal practices, RAH management began subjecting Curtis to a hostile work environment. RAH demoted her.

c. **MINDY ROBERTS** – Mindy Roberts, RN, was RAH's original director of nursing. RAH hired her in or about May 2014 because she was already taking care of a number of DEEOIC patients through a competitor, which RAH intended to be transferred to RAH. Defendants went on to use Roberts' name to establish NWIA, a front to recruit people who might be eligible for DEEOIC benefits, to get them assessed, and to funnel them to RAH. She is aware of the kickback

scheme. She is also aware of the sustained effort to reward patients and their families for choosing or staying with RAH. RAH directed Roberts to chart and bill for in-person care with its patients even when she was on a vacation to California. When Roberts objected to RAH and NWIA's illegal practices, as described herein, Defendants constructively demoted her to a part-time, hourly status.

d. **ASHLEY SEGARS** – Ashley Segars, RN, wrote the letters of medical necessity for potential patients of RAH, and recertification/increased hours/emergent 24/7 care letters for existing RAH patients. She prepared such letters for Dr. Jenkins, Dr. Franks and other physicians to sign. She also staffed Dr. Jenkins' RAH office, where Defendants directed their employees to pose as Dr. Jenkins' employees when seeing people to assess them for DEEOIC eligibility. At the behest of RAH, she exaggerated the degree of illness of patients on letters of medical necessity and for recertification/increased hours/emergent 24/7 care purposes in order to qualify patients for home health services who may not need home health services or to improperly increase the home health care benefits of the patient. When Nurse Segars informed RAH that she would not write letters of medical necessity on certain patients because the patients did not have a qualifying illness, RAH terminated her employment on or about April 2017.

e. **TAMARA WILLIFORD** – Tamara Williford, LPN, served as a nurse manager for RAH from October 2014 until RAH terminated her in April

2017. Williford worked in RAH's home office, which is guarded by the individual Defendants' large dogs which are trained with "kill commands." She is aware of RAH's method of obtaining patients by using a sham doctor's office, compensating unqualified family members for care, soliciting doctors, stealing patient names from an employee's doctor-father's office, giving potential patients gifts, etc. When RAH fired Nurse Segars for refusing to write certain letters of medical necessity for certification or re-certification, Williford stood up for her. RAH terminated Williford's employment on the same day as Segars' employment was terminated.

14. The United States of America (the "United States") is the real party in interest to this action. *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004).

### B. Defendants

15. **Remain at Home Senior Care, LLC (RAH)** was incorporated in Georgia in 2012. Since its incorporation, RAH has provided home health care to private pay patients. Shortly after it was incorporated, it began providing home health care services to patients under the DOL program known as DEEOIC. RAH started with six patients in 2012. It now has more than 56. It recruits patients in violation of the regulations through referrals from several sources. It pays kickbacks to doctors, patients and individuals for referrals of patients. RAH established a wholly-owned non-profit organization, Nuclear Workers Institute of America, for the purpose of assisting potentially eligible persons in obtaining a "white card" and the referring the patient to

9

RAH.  RAH bills the DOL more than ten million dollars a year for services that it does not render, for services to beneficiaries that are not medically necessary, for services provided by CNAs instead of RN or LPN as billed, and for services provided by unqualified home health care providers.

16.  **Nuclear Workers Institute of America (NWIA):**  Upon information and belief, NWIA is a non-profit corporation wholly owned by RAH.  NWIA was created to assist potentially-eligible individuals through the application process for initial benefits and additional benefits from the DOL.  RAH is prohibited by under the regulations from directly assisting potential beneficiaries with the application process.  NWIA performs this task exclusively for RAH and refers those individuals that qualify only to RAH.  NWIA recruits potential patients by setting up booths at events and festivals where current or former nuclear works may frequent.  NWIA activities are performed solely by RAH employees.

17.  **BRIAN CARRIGAN** – Brian Carrigan is one of the owners of RAH.  He is involved in the day to day running of the business.  He plays an active part in the fraud.  He is aware of all of the fraudulent activities of RAH.

18.  **TIM COLLINS** – Tim Collins is an owner of RAH.  He materially participates in the day-to day-operation of the business.  He participates in the fraud.  He has paid kickbacks to patients, doctors, and individuals for referrals of patients or retaining patients. He is aware and assists RAH in every aspect of the fraud.

19.  **DAWN BLACKWELL** – Dawn Blackwell is an owner of RAH.  Dawn Blackwell is a Registered Nurse.  She is very involved in every facet of the operation of RAH.  She is aware and participates in every act of fraud.

20.    **DR. FRANCIS HUGH JENKINS, II** – Dr. Francis Jenkins, II, is a medical doctor. He is the Director of the ICU at Athens Regional Medical Center and has a private practice in Athens, Ga.  Dr. Jenkins became qualified to certify patients eligible for benefits (impairment ratings) under the EEOICPA.  Dr. Jenkins worked for RAH part-time certifying patients' disability percentage and signing letters of medical necessity with inflated description of medical need so that the patient could receive home health care services from RAH paid for by the DOL.  Later, Dr. Jenkins worked out of RAH facility in Martinez, Georgia. as an independent contractor under FHJ, LLC, again providing letters of medical necessity with exaggerated description of medical need for home health care services, certifying disability ratings, and referring all patients to RAH.

21.    **FHJ, LLC** – FHJ, LLC is a corporation established for the purpose of removing Dr. Jenkins one step from RAH.  Dr. Jenkins was the only doctor employed by FHJ, LLC.  FHJ, LLC operated out of RAH facilities, and it certified disability impairment ratings and provided letters of medical necessity to patients it referred to RAH.

22.    **DR. PETER FRANKS** – Dr. Peter Franks is certified to provide disability ratings for the DOL.  For a period of time, Dr. Franks provided disability ratings and also signed Letters of Medical Necessity for RAH patients.  Dr. Franks was paid for referrals.  He also received fishing trips and other valuable gifts in exchange for referrals in violation of the Anti-kickback statute.

23.    **A.J. FRANKS** – A.J. Franks is the son of Dr. Peter Franks.  After Dr. Peter Franks terminated his relationship with RAH, A.J. Frank searched Dr. Franks files for potential patients to refer to RAH.  RAH paid A.J. Franks for the referrals.

### IV. STATUTORY AND REGULATORY PROVISIONS APPLICABLE TO DEFENDANTS' FALSE CLAIMS ACT VIOLATIONS

**A. Energy Employees Occupational Illness Compensation Program Act (EEOICPA or Act) 42 U.S.C. § 7101 et seq.**

24. The Energy Employees Occupational Illness Compensation Program Act (EEOICPA or Act) was enacted in October 2000. Part B of the EEOICPA, effective on July 31, 2001, compensates current or former employees (or their survivors) of the Department of Energy (DOE), its predecessor agencies, and certain of its vendors, contractors and subcontractors, who were diagnosed with a radiogenic cancer, chronic beryllium disease (CBD), beryllium sensitivity, or chronic silicosis, as a result of exposure to radiation, beryllium, or silica while employed at covered facilities. The EEOICPA also provides compensation to individuals (or their eligible survivors) awarded benefits by the Department of Justice (DOJ) under Section 5 of the Radiation Exposure Compensation Act (RECA). Part E of the EEOICPA (enacted October 28, 2004) compensates DOE contractor and subcontractor employees, eligible survivors of such employees, and uranium miners, millers, and ore transporters as defined by RECA Section 5, for any occupational illnesses that are causally linked to toxic exposures in the DOE or mining work environment. As such, the funds paid to medical care providers for services under the Act are payable by a Federal Health care program and covered by both the False Claims Act and the Anti-Kickback Act.

**B. The False Claims Act**

25. The federal False Claims Act provides that any person who knowingly presents or causes another to present to the government a false or fraudulent claim for payment

12

or approval is liable for a civil penalty of up to $11,000[3] for each such claim, plus three times the amount of the damages sustained by the government. 31 U.S.C. § 3729(a)(1)(A) & (B).  Liability attaches to anyone who (1) presents or causes to be presented for payment or approval by the United States (2) a false or fraudulent claim, (3) knowing the claim was false or fraudulent. *See* 31 U.S.C. § 3729(b)(2).

### C.  The Anti-Kickback Statute [42 U.S.C. § 1320a-7b(b)]

26.    The AKS prohibits the knowing and willful payment of "remuneration" to induce or reward patient referrals or the generation of business involving any item or service payable by the federal health care programs.  Remuneration includes anything of value and can take many forms besides cash, such as fishing trips, or other items of value. The statute covers the payers of kickbacks-those who offer or pay remuneration- as well as the recipients of kickbacks-those who solicit or receive remuneration.

### V.     SPECIFIC ALLEGATIONS OF DEFENDANTS' FALSE CLAIMS

27.    **Soliciting Patients**. RAH solicits and retains patients through a variety of illegal means:

(1) In order to receive home healthcare services under the EEOICPA, the patient must first have a "white card." [4]  Home healthcare providers are prohibited from any participation in the process of obtaining a white card.  Defendants assist potential patients in a variety of ways in procuring a white card and a disability rating.

---

[3] Conduct that occurred after November 1, 2015, Defendants must pay not less than $10,781.40 and not more than $21,562.80 for each violation of 31 U.S.C. § 3729 *et seq*.

[4] A "white card" is similar to an insurance card.  It is issued to individuals' who the DOL have found eligible under the Act.  The white card has the beneficiaries' name, numbers' and approved illness.

(a) RAH established NWIA for the purpose of recruiting persons eligible for a white card. NWIA attends community events, staffed by RAH employees who set up booths. RAH employees then assisted potentially-eligible individuals with the application process, including directing the individuals to certain doctors and assisting with disability ratings. See **Exhibit A**, incorporated herein by reference.

(b) RAH collects the names of individuals who may be eligible for white cards from patients and other sources. It then sends the potential white card holder a gift basket. Thereafter, RAH employees will telephone the potential white card holder and offer to assist in the application process.

(c) RAH pays a bounty on individuals who may be eligible for a white card. Sometimes the bounty is in cash and sometimes gifts such as deep sea fishing trips.

(2) In violation the Anti-Kickback Statute 42 U.S.C., RAH pays a bounty on leads to white card holders who are potential home healthcare patients.

(a) A.J. Franks is the son Dr. Peter Franks. Dr. Peter Franks is a physician approved by the DOL to certify disability ratings. A.J. Franks reviews files in Dr. Peter Franks office for white card holders. A. J. Franks then sells the contact information to RAH.

(b) RAH established NWIA for the purpose of recruiting persons eligible for a white card. NWIA attends community events, staffed by RAH employees who set up booths. RAH employees then assisted

    potentially-eligible individuals with the application process, including directing the individuals to certain doctors and assisting with disability ratings. (**Exhibit A**.)

(c) RAH improperly provided patients or patients families with valuable gifts to maintain the patients in the home healthcare program.

    i. RAH takes patients and patients families deep sea fishing on yacht berthed in Hilton Head Island, South Carolina.

    ii. RAH employs patients' family members who are not qualified under the statute for several reasons:

        a. They have other employment;

        b. They are patient's representatives and, thus, there is a conflict of interest;

        c. They are unable to qualify and unable to write the required notes. In those cases, RAH nurses fill in the necessary exam questions and write the notes for the family member who cannot otherwise qualify.

(d) Dr. Francis Hugh Jenkins – Dr. Jenkins was employed part-time by RAH to certify disability ratings for white cards under the DOL's DEEOIC program. He also signed letters of medical necessity prepared so that white card holders could receive home healthcare from RAH. Upon information and belief, he also signed DEEOIC re-certifications for RAH patients. After, FHJ, LLC was formed, Dr. Jenkins performed the same duties as an independent contractor with all of his referrals going

exclusively to RAH.

(e)  FHJ, LLC – See (d) above.

(f)  Dr. Peter Franks – Dr. Franks, a physician practicing in Hardeeville, South Carolina, is qualified to certify disability ratings for white cards under the DOL's DEEOIC program. Dr. Frank referred white cardholders to RAH in exchange for a fee and for deep sea fishing trips and other things of value.

28. **RAH illegally prepares the letters of medical necessity as follows**:
   (1) RAH exaggerates the medical condition of the white card holder in order to receive approval for home healthcare services and/or to increase the amount and level of home healthcare services.
   (2) RAH prepares RAH prepares letters of medical necessity for signatures by Dr. Jenkins when Dr. Jenkins has never seen the patient.

29. **RAH bills the DOL for services not rendered.** Nurses and CNAs are told to chart time spent with patients when they did not spend the time with the patients. One patient travels extensively. That patient is charted and billed even when the patient is out of town. The vast majority of RAH patients do not receive the number of units billed to the DOL for nurse and CNA services. (**Exhibit A**.)

30. **RAH bills DOL or for services not medically necessary.** Many of RAH home healthcare patients under the DOL's DEEOIC program do not meet the requirements for home healthcare services. Additionally, many other patients, while meeting the requirements of the DEEOIC program, are receiving many more benefits than required.

31. **RAH bills DOL for for services of a RN or LPN when the services were provided by a CNA.**

16

## V.  COUNTS

### COUNT ONE
### (Against All Defendants)
### (Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A))[5]

32. Relators re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

33. This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

34. By virtue of the conduct described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment to federal health care programs.

35. The United States, unaware of the violations or the false or fraudulent nature of the claims that Defendants caused, paid for claims that otherwise would not have been allowed.

36. By reason of these payments, the United States has been damaged and continues to be damaged, in a substantial amount.

### COUNT TWO
### (Against All Defendants)
### (Federal False Claims Act, 31 U.S.C. § 3729 (a)(1)(C))[6]

37. Relators re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

38. This is a claim for treble damages and civil penalties under the False Claims Act,

---

[5] To the extent wrongdoing occurred prior to May 20, 2009, this Complaint should be deemed to include violations of the Federal False Claims Act prior to its recent amendments, *e.g.* 31 U.S.C. § 3730(a)(1) (2006).

[6] To the extent wrongdoing occurred prior to May 20, 2009, this Amended Complaint should be deemed to include violations of the Federal False Claims Act prior to its recent amendments, e.g. 31 U.S.C. § 3730 (a)(3).

31 U.S.C. § 3729(a)(1)(C).

39.  In creating and implementing the kickback scheme described above, Defendants conspired to commit violations of 31 U.S.C. § 3729(a)(1)(A).

40.  The United States, unaware of the false or fraudulent nature of the claims that Defendants caused, paid for claims that otherwise would not have been allowed.

41.  By reason of these payments, the United States has been damaged and continues to be damaged in a substantial amount.

### COUNT THREE
### (Against Defendant RAH)
### (Federal False Claims Act, 31 U.S.C. § 3730(h))

42.  Relators re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

43.  This claim is for damages and attorneys' fees under the False Claims Act 31 U.S.C. § 3730(h).

44.  As described herein, by discriminating against each of the Relators for their efforts to prevent Defendant RAH from further violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* RAH violated the False Claims Act, 31 U.S.C. § 3730(h).

45.  By reason of its discriminatory conduct, the Relators have been damaged and continue to be damaged in a substantial amount.

### VI.  PRAYER FOR RELIEF

**WHEREFORE**, Relators request that judgment be entered against Defendants, ordering that:

   a.  Defendants cease and desist from violating the Anti-Kickback Statute, 42 U.S.C. § 1320 1320a-7b(b), the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the State False Claims Acts;

b. Defendants pay not less than $5,500 and not more than $11,000[7] for each violation of 31 U.S.C. § 3729, plus three times the amount of damages the United States has sustained because of Defendants' actions, plus the appropriate amount under each of the state False Claims Acts;

c. The Relators be awarded the maximum "relator's share" allowed pursuant to 31 U.S.C. § 3730(d);

d. The Relators be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d);

e. Defendants be enjoined from concealing, removing, encumbering or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court;

f. Defendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

g. Relators' be awarded damages and attorney fees pursuant to 31 U.S.C. § 3730(h); and

g. The United States and the Relators recover such other relief as the Court deems just and proper.

---

[7] For conduct that occurred after November 1, 2015, Defendants pay not less than $10,781.40 and not more than $21,562.80 for each violation of 31 U.S.C. § 3729 et seq.

Respectfully submitted by:

/s Nekki Shutt
Nekki Shutt, Esq. (Fed. ID. No. 6530)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, Second Floor
P.O. Box 1929
Columbia, South Carolina 29202-1929
Telephone: 803.904.7912
Facsimile: 804.940.7910
nshutt@burnetteshutt.law

Columbia, South Carolina

June 7, 2017

/s/ Frances C. Trapp
Frances C. Trapp (Fed. ID No. 6376)
fran@billnettleslaw.com
2008 Lincoln St.
Columbia, SC 29201
Tel: (803) 814-2826

Columbia, South Carolina

June 7, 2017