**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| The United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 1:17-cv-01493-JMC |
| *ex rel*, ) | |
| ) | **ORDER AND OPINION** |
| Tanja Adams; Kianna Curtis; Mindy Roberts; ) | |
| Ashley Segars; and Tamara Williford, ) | |
| ) | |
| Plaintiff-Relators, ) | |
| ) | |
| v. ) | |
| ) | |
| Remain at Home Senior Care, LLC; ) | |
| Nuclear Workers Institute of America; ) | |
| Brian Carrigan; Tim Collins; Dawn Blackwell; ) | |
| Dr. Francis Jenkins, II; FHJ PULM LLC; ) | |
| Dr. Peter Frank; A.J. Frank; ) | |
| Twilight Health, LLC; ) | |
| and RAH Holdings, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff-Relators ("Relators") bring this *qui tam* action on behalf of the United States and themselves, against Defendants Remain at Home Senior Care, LLC ("RAH"), Nuclear Workers Institute of America ("NWIA"), Brian Carrigan ("Carrigan"), Tim Collins ("Collins"), Dawn Blackwell ("Blackwell"), Dr. Francis Jenkins, II ("Dr. Jenkins"), FHJ PULM, LLC ("FHJ"), Dr. Peter Frank ("Dr. Frank"), A.J. Frank ("A.J. Frank"), Twilight Health, LLC ("Twilight"), and RAH Holdings, LLC ("RAH Holdings") (collectively "Defendants"), pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. (ECF No. 29.)

This matter is before the court pursuant to three separate Motions to Dismiss filed respectively by Defendants Carrigan, Collins, Blackwell, and Frank (ECF No. 64), Defendants

RAH and NWIA (ECF No. 65), and Defendants Twilight and RAH Holdings (ECF No. 66).[1]  For the reasons stated herein, the court **GRANTS** Defendants' Motions to Dismiss in part and **DENIES** Defendants' Motions to Dismiss in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Relators are licensed nurses formerly employed by RAH.  (ECF No. 29 at 4 ¶ 11.)  Relators filed their original complaint on June 7, 2017, alleging that Defendants fraudulently submitted claims to the Department of Labor ("DOL") under the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. §§ 7384-85.  (ECF No. 1 at 1-2 ¶ 1.)  The EEOICPA compensates eligible individuals who were diagnosed with certain conditions while employed at specific Department of Energy ("DOE") facilities or awarded benefits under the Radiation Exposure Compensation Act ("RECA"), 42 U.S.C. § 2210.  (*Id.* at 11 ¶ 24.)

On September 16, 2019, Relators filed their Amended Complaint, asserting that Defendants defrauded the United States by: (1) fraudulently recruiting patients to participate in the Division of Energy Employees Occupational Illness ("DEEOIC") Program;[2] (2) fraudulently providing letters of medical necessity to allow patients to receive unnecessary benefits under the EEOICPA; (3) forging signatures on renewal letters of medical necessity for benefits under the EEOICPA; (4) fraudulently inducing illegitimate EEOICPA impairment ratings; (5) receiving kickbacks and paying kickbacks for patient referrals under the EEOICPA; (6) providing illegal payments and gifts to patients in the EEOICPA Program; (7) billing the DOL for EEOICPA home health care provider services that were actually provided by unqualified patient relatives; (8)

---

[1] The court will address Defendant Dr. Peter Frank's Motion to Dismiss (ECF No. 42) and Defendants Dr. Francis Jenkins, II's and FHJ PULM LLC's Motion to Dismiss (ECF No. 86) in separate orders.
[2] The DEEOIC Program is a segment of the EEOICPA applicable to DOE employees.  (ECF No. 1 at 1-2 n.1.)

2

billing the DOL for registered nurse ("RN") or licensed practical nurse ("LPN") services under the EEOICPA when services were actually provided by a certified nurse assistant ("CNA"); (9) billing the DOL for unnecessary medical services under the EEOICPA, and/or; (10) billing the DOL for services not rendered under the EEOICPA. (ECF No. 29 at 1-2 ¶ 1.) Relators allege that Defendants conspired to present these false claims to the government in order to receive payment from federal health care programs. (*Id.* at 19-21.) In addition, Relators maintain that RAH, Twilight, and RAH Holdings retaliated against them for objecting to the alleged FCA violations. (*Id.* at 20-21 ¶¶ 45-49.) Consequently, Relators claim that all Defendants violated § 3729(a)(1)(A) and (C) of the FCA and RAH, Twilight, and RAH Holdings violated § 3730(h). (*Id.* at 19-21.) Relators support these claims with Exhibit A of the Amended Complaint (ECF No. 29-1) which lists services RAH and NWIA provided to certain patients.

On November 19, 2019, Defendants filed their respective Motions to Dismiss. (ECF Nos. 64, 65, 66.) Relators filed their Combined Response in Opposition to Defendants' Motions (ECF No. 76) on December 17, 2019, to which Defendants filed their Combined Reply (ECF No. 80) on December 23, 2019.

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). Because FCA claims sound in fraud, substantive FCA claims must satisfy both Federal Rule of Civil Procedure 8(a)'s plausibility requirement and Federal Rule of Civil Procedure 9(b)'s particularity standard to survive a motion to dismiss. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016).

Under Rule 8(a), a pleading must contain a "short and plain statement of the claim showing

3

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Rule 9(b) imposes a heightened pleading standard on fraud claims, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to comply "with Rule 9(b)'s particularity requirement for allegations of fraud is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)).

The FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the "gravity" and "quasi-criminal nature" of FCA liability since an entity found in violation of the FCA may be liable for treble damages. *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018).

Section 3729(a)(1)(A) of the FCA prohibits any person from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval." In false presentment cases under § 3729(a)(1)(A), a central question is "whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'" *Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86). A "claim" is "any request

4

or demand, whether under a contract or otherwise, for money or property that ... is presented to an officer, employee, or agent of the United States." § 3729(b). A claim submitted based on a violation of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, also constitutes a false or fraudulent claim under the FCA. *See* § 1320a-7b(g). The AKS prohibits making or accepting payments to induce or reward referrals for federally-funded health care services. § 1320a-7b(b).

Under the FCA, "knowingly" means acting (1) with actual knowledge of falsity of information; (2) in deliberate ignorance of the truth or falsity of that information; or (3) in reckless disregard for its truth or falsity. § 3729(b)(1). Although Rule 9(b) permits knowledge to be "alleged generally" as compared to fraud or mistake, it does not excuse the requirement of a sufficient factual basis to support allegations of knowledge. *Iqbal*, 556 U.S. at 686. The complaint must allege facts sufficient to find the requisite knowledge for FCA liability.

"[T]here are two ways to adequately plead presentment" of a false claim under Rule 9(b). *Grant*, 912 F.3d at 197. First, a relator can "allege with particularity that specific false claims actually were presented to the government for payment." *Id.* (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013)). The relator must, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*, 176 F.3d at 784). Second, the relator "can allege a pattern of conduct that would 'necessarily have led[ ] to submission of false claims' to the government for payment." *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457).

To state a cause of action under § 3729(a)(1)(C), a relator must allege that defendants "conspired" to commit a violation of § 3729(a)(1). Therefore, to state a conspiracy claim under

5

the FCA, a relator must show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim reimbursed by the government, and (2) at least one act performed in furtherance of that agreement. *U.S. ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010). The conspirators must have "shared a specific intent to defraud the Government." *Id.*

Section 3730(h) provides relief to employees who experienced retaliation as a result of their efforts to prevent FCA violations. Unlike §3729(a)(1)(A) and § 3729(a)(1)(C) claims, retaliation claims under § 3730(h) are not subject to Rule 9(b)'s heightened particularity requirement. *Grant*, 912 F.3d at 200. Instead, a plaintiff need only satisfy Rule 8(a)'s notice-pleading standard to survive a motion to dismiss. *Id.* Accordingly, to sufficiently plead a § 3730(h) retaliation claim, a plaintiff must allege facts sufficient to support a "reasonable inference" of three elements: (1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result. *Id.* Protected activity includes acts "in furtherance of an [FCA action]" and "other efforts to stop 1 or more [FCA violations][.]" *Id.*

### III.    ANALYSIS

A. <u>ECF No. 64: Defendants Carrigan's, Collins', Blackwell's, and Frank's Motion to Dismiss</u>

**1. Defendant Carrigan**

Carrigan is only mentioned in one paragraph of the Amended Complaint. (*See* ECF No. 29.) Relators assert that as one of the owners of RAH, Carrigan is involved in the "day-to-day" operations of the business, plays an "active part" in the fraud, and is aware of RAH's "fraudulent" activities. (*Id.* at 9-10 ¶ 17.) Such claims are insufficient to allege that Carrigan submitted or conspired to submit false claims to the government. Relators do not identify a single false claim

6

that Carrigan submitted to the government, indicate when and where Carrigan submitted a false claim, or plead facts suggesting that Carrigan "knowingly" submitted false claims. In addition, the Amended Complaint does not suggest that Carrigan entered into an agreement with the other Defendants to submit false claims to the government. It does not reference any interaction or communication Carrigan had with the other Defendants, much less an agreement.

**2. Defendant Collins**

Relators claim that like Carrigan, Collins is an owner of RAH who participates in the "day-to-day" operation of the business, "participates" in the fraud, and is "aware" of every aspect of the fraud. (*Id.* at 10 ¶ 18.) However, Relators allege that unlike Carrigan, Collins "paid kickbacks to patients, doctors, and individuals for referrals of patients or retaining patients." (*Id.*) A plaintiff must plead AKS violations with particularity under Rule 9(b). *United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 730 (D.S.C. 2017) (citing *United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed. App'x. 890, 894 (5th Cir. 2013) ("elements of the AKS violation must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim")).

In Exhibit A of the Amended Complaint, Relators allege that Collins paid to obtain or retain patients on eight occasions. (ECF No. 29-1 at 1, 2, 5, 7, 8.) Most of the claims are conclusory and do not specifically indicate the time, place, amount, or recipient of the payment. (*See, e.g.*, *id.* at 1 ("Tim Collins gives patient's family money in exchange for allowing RAH to treat patient").) However, Relators allege in detail that "Collins bought patient a $10,000 bed and a riding lawn mower for patient on or about July 2014[.]" (*Id.* at 7.) This allegation alone details the timing and content of the kickback. Since the Amended Complaint states that RAH patients lived in South Carolina, Georgia, and Florida and the residency of the patient who received the kickback

7

will be disclosed when the patient's name is un-redacted in Exhibit A during discovery, Relators have also alleged the place of the kickback. (ECF No. 29 at 3 n.2.) Therefore, Relators have sufficiently pled a false presentment claim against Collins.

Nevertheless, the Amended Complaint does not support a conspiracy claim under the FCA against Collins. Relators do not allege any contact Collins had with the other Defendants, let alone facts that would support the existence of an unlawful agreement between Collins and another Defendant to present a false claim to the government for reimbursement.

**3.  Defendant Blackwell**

Like Carrigan and Collins, Blackwell is alleged to be an owner of RAH who is "involved" in the operation of RAH and "is aware and participates in every act of fraud." (*Id.* at 10.) Relators also maintain that she arranged for one patient to get a white card[3] and performed billing services for Dr. Jenkins and FHJ. (ECF Nos. 29 at 10-11, 29-1 at 12.) Such allegations fail to support the false presentment claim against Blackwell. Relators do not identify a specific claim that Blackwell submitted to the government, much less the time, place, and contents of false representations she made to the government. They do indicate that Blackwell performed billing services for Dr. Jenkins and FHJ, but they fail to indicate if, when, or where she submitted inflated bills to the DOL. Additionally, Relators fail to sufficiently allege that Blackwell had the requisite knowledge for FCA liability. They summarily allege that Blackwell is "aware" of the fraud but do not plead facts that would support such an allegation. (ECF No. 29 at 10.) Finally, the Amended Complaint fails to support a conspiracy claim against Blackwell because it does not allege any contact or

---

[3] A "white card" is issued to eligible individuals under the EEOICPA and allows them to receive healthcare services for approved illnesses under the Act. (ECF No. 29 at 14 n.4.)

relationship she had with the other defendants that would support the existence of an unlawful agreement to submit a false claim.

Relators' strongest allegation is that Blackwell helped a patient obtain a white card in violation of the AKS. (ECF No. 29-1 at 12.) However, the allegation is insufficient to plead a FCA violation because it lacks particularity. Relators do not indicate how or when Blackwell obtained a white card for the patient.

**4. Defendant Frank**

The Amended Complaint alleges that Frank violated the AKS by accepting payments from RAH for patient referrals. (ECF No. 29 at 11, 15.) It asserts that Frank solicited people with white cards to become RAH patients by searching Dr. Frank's files for potential patients and giving them "valuable" gifts. (*Id.* at 11.) Specifically, Relators claim that Frank "located patient in Dr. Franks' [sic] files and solicited patient to get home healthcare through RAH" on eight occasions. (ECF No. 29-1 at 1, 4, 6, 9, 10, 11, 13.) They contend that Frank provided patients with "gift baskets" on four of those eight occasions. (*Id.* at 6, 9, 11, 13.)

Relators' allegations fail to support the false presentment and conspiracy claims against Frank. Although the allegations against Frank are more detailed than those against the other individual Defendants, they still fail to meet Rule 9(b)'s particularity requirement. The Amended Complaint seems to encompass conduct that occurred from 2014 to 2018 but does not even allege a general timeframe when Frank paid for patient referrals. (*See* ECF No. 29.) Additionally, Relators do not plead adequate facts to suggest that Frank entered into an agreement with the other Defendants to submit false claims to federal healthcare programs. The Amended Complaint does not indicate whether Frank came to a meeting of the minds with the other Defendants to submit

9

claims induced by kickbacks to the government. It fails to plead facts suggesting that Frank had the specific intent to defraud the government and does not indicate the duration of the agreement.

Therefore, the court grants the Motion to Dismiss (ECF No. 64) as to the FCA false presentment claims (§ 3729(a)(1)(A)) against Carrigan, Blackwell, and Frank and the FCA conspiracy claims (§ 3729(a)(1)(C)) against Carrigan, Collins, Blackwell, and Frank. The court denies the Motion to Dismiss (ECF No. 64) as to the FCA false presentment claim (§ 3729(a)(1)(A)) against Collins.

B.  ECF No. 65: Defendants RAH's and NWIA's Motion to Dismiss

**1. Defendant RAH**

Relators claim that RAH billed the DOL for services that were unnecessary, not rendered, and provided by CNAs instead of RNs or LPNs. (ECF No. 29 at 9.) In addition, they assert that RAH exaggerated patient illnesses on letters of medical necessity, paid kickbacks to obtain and retain patients, and retaliated against Relators for "objecting to RAH's illegal practices." (*Id.* at 1-2, 17-18, 6.) Relators support their claims in Exhibit A by listing allegedly improper claims RAH submitted to the DOL. (*See, e.g.*, ECF No. 29-1 at 12 ("From December 2016 to at least July 2017, RAH charged for at least 30 nursing hours a week and patient only used 1-2 nursing hours per week").) Relators also claim that RAH established NWIA for the purpose of recruiting persons eligible for a white card. (ECF No. 29 at 15.)

The claims against RAH are sufficient to allege that RAH presented false claims to the government. First, Relators allege with particularity that RAH presented false claims to the DOL. Relators allege that RAH required them to "charge the DOL" for unnecessary and undelivered services in South Carolina, Georgia, and Florida in the Amended Complaint. (*See id.* at 5, 3 n.2.) Exhibit A then lists how and when RAH overcharged the DOL for certain patients. (*See, e.g.*, ECF

29-1 at 4 ("Between December 2016 and June 2017, nurses charted 12 hours a day for her care and only performed six hours or less of care").)  Relators also sufficiently detail the "time, place, and contents" of kickbacks RAH provided to prospective patients and patients to obtain and retain their business.  *See Kellogg*, 525 F.3d at 379.  Relators allege that prospective patients and patients in South Carolina, Georgia, and Florida received kickbacks in the Amended Complaint and then further detail the time and amount of the kickback in Exhibit A.  (*See* ECF No. 29 at 3 n.2, 29-1 at 3 ("On or about May or June 2016 … RAH continuously sent patient expensive gift baskets, gift cards, flowers, etc. to persuade her to switch" care providers.").).  Second, Relators have alleged facts sufficient to find the requisite knowledge for FCA liability.  For example, Relator Adams maintains her "RAH manager" told her "he paid her not to do shit" while Relator Roberts claims RAH required her "to chart and bill for in-person care with its patients even when she was on a vacation to California."  (ECF No. 29 at 5.)

Although Relators have sufficiently asserted a false presentment claim against RAH, their claims against RAH are insufficient to suggest that RAH conspired to present false claims to the government.  Relators fail to plead any facts indicating that RAH entered into an agreement with the other Defendants to present false claims for reimbursement to the government.  They claim that RAH established NWIA but plead no facts suggesting that RAH arranged, contracted, or agreed with NWIA to submit false claims.  (*Id.* at 15.)  Moreover, the Amended Complaint asserts that RAH, Twilight, and RAH Holdings used the same business practices but pleads no facts suggesting that RAH, Twilight, and RAH Holdings agreed to submit false claims together.

However, the allegations in the Amended Complaint do support a retaliation claim against RAH under § 3730(h).  Unlike §3729(a)(1)(A) and § 3729(a)(1)(C) claims, retaliation claims under § 3730(h) are not subject to Rule 9(b)'s heightened particularity requirement and must only satisfy

Rule 8(a)'s notice-pleading standard to survive a motion to dismiss. *Grant*, 912 F.3d at 200. Here, Relators' claim that RAH retaliated against them because of their efforts to prevent RAH from committing further violations of the FCA is "plausible on its face." *Iqbal*, 556 U.S. at 678. Relators assert that they were engaged in protected activity because they objected to submitting inflated claims and fraudulent letters of medical necessity to the DOL. (*See* ECF No. 29 at 5-8.) Relators also plead facts suggesting that RAH was their employer, knew of the protected activity, and took adverse action against them as a result. They claim they were harassed, demoted, and fired by RAH after objecting to its billing and charting practices. (*See, e.g.*, *id.* at 5-6 ("When Adams objected to RAH's illegal practices, RAH stopped giving Adams additional case management assignments. RAH management has also subjected Adams to a hostile work environment, harassing her and threatening termination of employment twice, because she objected to charting unworked hours. Adams was constructively discharged or resigned from RAH in March 2018.").)

## 2. Defendant NWIA

Relators allege that NWIA is an unincorporated, non-profit corporation wholly-owned by RAH and created to help potential patients obtain benefits from the DOL. (*Id.* at 9.) They assert that NWIA recruits patients by setting up booths and food trucks at events frequented by current or former nuclear workers, helping prospective patients obtain white cards, and referring qualifying individuals to RAH. (*Id.*) The only allegations against NWIA in Exhibit A are that NWIA "wrote" a letter of medical necessity with "three fraudulent diagnoses" in April 2017 and helped four patients obtain white cards. (ECF No. 29-1 at 4, 6, 9, 10, 11.)

Relators' claims against NWIA are unsupported by the allegations in the Amended Complaint. Relators' false presentment claims against NWIA fail to meet Rule 9(b)'s particularity

standard. They plead no facts suggesting that NWIA's actions caused a false claim to be submitted to the government and fail to even generally allege when and how NWIA assisted patients with white cards. Relators do allege that NWIA "wrote" a fraudulent letter of medical necessity in April 2017, but they do not indicate if NWIA "knowingly" submitted it to the government. (*Id.* at 4.) Relators similarly fail to plead the FCA conspiracy claim against NWIA with particularity. The Amended Complaint asserts that NWIA was created by RAH, but it does not plead facts suggesting that NWIA entered into an unlawful agreement with RAH to submit false claims. (ECF No. 29 at 9.) It does not describe any communications, contracts, or interactions NWIA had with the other Defendants that would support the existence of a conspiracy.

As a result, the court grants the Motion to Dismiss (ECF No. 65) as to the FCA false presentment claim (§ 3729(a)(1)(A)) against NWIA and the FCA conspiracy claims (§ 3729(a)(1)(C)) against RAH and NWIA. The court denies the Motion to Dismiss (ECF No. 65) as to the FCA false presentment claim (§ 3729(a)(1)(A)) and FCA retaliation claim (§ 3730(h)) against RAH.

C. ECF No. 66: Defendants Twilight's and RAH Holdings' Motion to Dismiss

Relators allege that Twilight was incorporated in Utah in 2017 and RAH Holdings was incorporated in Delaware in 2009 but otherwise make the same allegations against both entities. (ECF No. 29 at 12.) They contend that Twilight and RAH Holdings have the same owners, managers, and employees as RAH and use NWIA to obtain patients. (*Id.*) Additionally, Relators maintain that Twilight and RAH Holdings paid kickbacks to obtain patients and billed the DOL for services that were unnecessary, not rendered, and provided by CNAs instead of RNs or LPNs. (*Id.*)

First, Relators fail to plead sufficient facts supporting the false presentment claims against Twilight and RAH Holdings. They do not identify a single specific false claim Twilight and RAH Holdings submitted to the government, much less the amount and timing of an allegedly fraudulent claim the entities submitted to the government for reimbursement. Although the Amended Complaint contains sweeping conclusory allegations against Twilight and RAH Holdings, Exhibit A does not identify a single patient Twilight or RAH Holdings submitted claims on behalf of. (*See* ECF Nos. 29, 29-1.) In fact, Exhibit A does not even reference Twilight or RAH Holdings. (*See* ECF No. 29-1.)

Second, Relators' allegations fail to support the FCA conspiracy claims against Twilight and RAH Holdings. Relators do not describe communications, interactions, or relationships Twilight and RAH Holdings had with other Defendants suggesting that Twilight and RAH Holdings entered into an agreement with other Defendants to submit false claims to the government.

Finally, the Amended Complaint does not support the retaliation claims against Twilight and RAH Holdings. A retaliation claim under § 3730(h) requires that a plaintiff experience adverse action from "his employer." Here, there are no allegations suggesting that Relators were employed by Twilight or RAH Holdings. Relators claim that they "worked for Defendant Remain at Home Senior Care" and contend that they were harassed, demoted, or fired by RAH. (ECF No. 29 at 2, 5-8.)

Accordingly, the court grants the Motion to Dismiss (ECF No. 66).

## IV.   CONCLUSION

After a thorough review of the record and Defendants' Motions to Dismiss, the court **GRANTS** the Motion to Dismiss by Defendants Carrigan, Collins, Blackwell, and Frank (ECF

No. 64) as to the FCA false presentment claims (§ 3729(a)(1)(A)) against Carrigan, Blackwell, and Frank and the FCA conspiracy claims (§ 3729(a)(1)(C)) against Carrigan, Collins, Blackwell, and Frank.  The court **DENIES** the Motion to Dismiss by Defendants Carrigan, Collins, Blackwell, and Frank (ECF No. 64) as to the FCA false presentment claim (§ 3729(a)(1)(A)) against Collins.  The court **GRANTS** the Motion to Dismiss by Defendants RAH and NWIA (ECF No. 65) as to the FCA false presentment claim (§ 3729(a)(1)(A)) against NWIA and the FCA conspiracy claims (§ 3729(a)(1)(C)) against RAH and NWIA.  The court **DENIES** the Motion to Dismiss by Defendants RAH and NWIA (ECF No. 65) as to the FCA false presentment claim (§ 3729(a)(1)(A)) and FCA retaliation claim (§ 3730(h)) against RAH.  The court **GRANTS** the Motion to Dismiss by Defendants Twilight and RAH Holdings (ECF No. 66) as to the FCA false presentment claims (§ 3729(a)(1)(A)), conspiracy claims (§ 3729(a)(1)(C)), and retaliation claims (§ 3730(h)) against Twilight and RAH Holdings.  As a result, the court **DISMISSES WITHOUT PREJUDICE** all claims against Carrigan, Blackwell, Frank, NWIA, Twilight, and RAH Holdings as well as the FCA conspiracy claims (§ 3729(a)(1)(C)) against Collins and RAH.  Therefore, the FCA false presentment claim (§ 3729(a)(1)(A)) remains against Collins and the FCA false presentment claim (§ 3729(a)(1)(A)) and retaliation claim (§ 3730(h)) remain against RAH.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 26, 2020
Columbia, South Carolina

15