# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| The United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 1:17-cv-01493-JMC |
| *ex rel*, ) | |
| ) | **ORDER AND OPINION** |
| Tanja Adams; Kianna Curtis; Mindy Roberts; ) | |
| Ashley Segars; and Tamara Williford, ) | |
| ) | |
| Plaintiff-Relators, ) | |
| ) | |
| v. ) | |
| ) | |
| Remain at Home Senior Care, LLC; ) | |
| Nuclear Workers Institute of America; ) | |
| Brian Carrigan; Tim Collins; Dawn Blackwell; ) | |
| Dr. Francis Jenkins, II; FHJ PULM LLC; ) | |
| Dr. Peter Frank; A.J. Frank; ) | |
| Twilight Health, LLC; ) | |
| and RAH Holdings, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff-Relators ("Relators") bring this *qui tam* action on behalf of the United States and themselves, against Defendants Remain at Home Senior Care, LLC ("RAH"), Nuclear Workers Institute of America ("NWIA"), Brian Carrigan ("Carrigan"), Tim Collins ("Collins"), Dawn Blackwell ("Blackwell"), Dr. Francis Jenkins, II ("Dr. Jenkins"), FHJ PULM, LLC ("FHJ"), Dr. Peter Frank ("Dr. Frank"), A.J. Frank ("A.J. Frank"), Twilight Health, LLC ("Twilight"), and RAH Holdings, LLC ("RAH Holdings") (collectively "Defendants"), pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. (ECF No. 29.)

1

This matter is before the court pursuant to Defendant Dr. Frank's Motion to Dismiss (ECF No. 42).¹ For the reasons stated herein, the court **GRANTS** the Motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Relators are licensed nurses formerly employed by RAH. (ECF No. 29 at 4 ¶ 11.) Relators filed their original complaint on June 7, 2017, alleging that Defendants fraudulently submitted claims to the Department of Labor ("DOL") under the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. §§ 7384-85. (ECF No. 1 at 1-2 ¶ 1.) The EEOICPA compensates eligible individuals who were diagnosed with certain conditions while employed at specific Department of Energy ("DOE") facilities or awarded benefits under the Radiation Exposure Compensation Act ("RECA"), 42 U.S.C. § 2210. (*Id.* at 11 ¶ 24.)

On September 16, 2019, Relators filed their Amended Complaint, asserting that Defendants defrauded the United States by: (1) fraudulently recruiting patients to participate in the Division of Energy Employees Occupational Illness ("DEEOIC") Program;² (2) fraudulently providing letters of medical necessity to allow patients to receive unnecessary benefits under the EEOICPA; (3) forging signatures on renewal letters of medical necessity for benefits under the EEOICPA; (4) fraudulently inducing illegitimate EEOICPA impairment ratings; (5) receiving kickbacks and paying kickbacks for patient referrals under the EEOICPA; (6) providing illegal

---

¹ On August 26, 2020, the court issued an order granting in part and denying in part Motions to Dismiss filed respectively by Defendants Carrigan, Collins, Blackwell, and Frank (ECF No. 64), Defendants RAH and NWIA (ECF No. 65), and Defendants Twilight and RAH Holdings (ECF No. 66). (ECF No. 94.) The court dismissed all claims against Carrigan, Blackwell, Frank, NWIA, Twilight, and RAH Holdings as well as the FCA conspiracy claims (§ 3729(a)(1)(C)) against Collins and RAH. (*Id.* at 15.) As a result, the FCA false presentment claim (§ 3729(a)(1)(A)) remains against Collins and the FCA false presentment claim (§ 3729(a)(1)(A)) and retaliation claim (§ 3730(h)) remain against RAH. (*Id.*) The court will address Defendants Dr. Francis Jenkins, II's and FHJ PULM LLC's Motion to Dismiss (ECF No. 86) in a separate order.

² The DEEOIC Program is a segment of the EEOICPA applicable to DOE employees. (ECF No. 1 at 1-2 n.1.)

payments and gifts to patients in the EEOICPA Program; (7) billing the DOL for EEOICPA home health care provider services that were actually provided by unqualified patient relatives; (8) billing the DOL for registered nurse ("RN") or licensed practical nurse ("LPN") services under the EEOICPA that were actually provided by a certified nurse assistant ("CNA"); (9) billing the DOL for unnecessary medical services under the EEOICPA, and/or; (10) billing the DOL for services not rendered under the EEOICPA. (ECF No. 29 at 1-2 ¶ 1.) Relators support these claims with Exhibit A of the Amended Complaint (ECF No. 29-1) which lists services RAH and NWIA provided to certain patients.

Relators maintain that Dr. Frank is certified to provide disability ratings for the DOL and provided RAH patients with disability ratings and letters of medical necessity "for a period of time[.]" (ECF No. 29 at 11.) They allege that Dr. Frank's son, A.J. Frank, worked at RAH and was responsible for soliciting people with white cards[3] to become RAH patients. (*Id.*) The allegations against Dr. Frank in the Amended Complaint fall into two categories. First, Relators claim that Dr. Frank was "paid for referrals." (*Id.*) Specifically, they assert that "Dr. Frank referred white-card holders to RAH in exchange for a fee, for employment of his son, and for deep sea fishing trips and other things of value." (*Id.* at 17.) Second, Relators allege that "Dr. Frank allowed A.J. Frank access to his confidential patient files so that A.J. Frank could obtain sales leads of patients who already [had] EEOICPA white cards or who may have been eligible for EEOICPA care through RAH." (*Id.* at 11.) Relators contend that A.J. Frank located patients in Dr. Frank's files and solicited them to receive home healthcare through RAH on nine occasions. (ECF No. 29-1 at 1, 4, 6, 9, 10, 11, 13.) Consequently, Relators maintain that Dr. Frank presented

---

[3] A "white card" is issued to eligible individuals under the EEOICPA and allows them to receive healthcare services for approved illnesses under the Act. (ECF No. 29 at 14 n.4.)

false claims to the government in violation of § 3729(a)(1)(A) and conspired to present false claims to the government in violation of § 3729(a)(1)(C). (ECF No. 29 at 19-20.)

Dr. Frank filed this Motion to Dismiss (ECF No. 42) on September 27, 2019 and Relators filed a Response in Opposition (ECF No. 58) on October 11, 2019. Dr. Frank filed a Reply (ECF No. 59) on October 18, 2019.

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). Because FCA claims sound in fraud, substantive FCA claims must satisfy both Federal Rule of Civil Procedure 8(a)'s plausibility requirement and Federal Rule of Civil Procedure 9(b)'s particularity standard to survive a motion to dismiss. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016).

Under Rule 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Rule 9(b) imposes a heightened pleading standard on fraud claims, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to comply "with Rule 9(b)'s particularity requirement for allegations of fraud is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*,

176 F.3d 776, 783 n.5 (4th Cir. 1999) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)).

The FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the "gravity" and "quasi-criminal nature" of FCA liability since a defendant found in violation of the FCA may be liable for treble damages. *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018).

Section 3729(a)(1)(A) of the FCA prohibits any person from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval." In false presentment cases under § 3729(a)(1)(A), a central question is "whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'" *Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86). A "claim" is "any request or demand, whether under a contract or otherwise, for money or property that ... is presented to an officer, employee, or agent of the United States." § 3729(b).

A claim submitted based on a violation of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, also constitutes a false or fraudulent claim under the FCA. *See* § 1320a-7b(g). The AKS prohibits making or accepting payments to induce or reward referrals for federally-funded health care services. § 1320a-7b(b). A plaintiff must plead AKS violations with particularity under Rule 9(b). *United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 730 (D.S.C. 2017) (citing *United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed. App'x. 890, 894 (5th Cir. 2013) ("elements of the AKS violation must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim")).

Under the FCA, "knowingly" means acting (1) with actual knowledge of falsity of information; (2) in deliberate ignorance of the truth or falsity of that information; or (3) in reckless disregard for its truth or falsity.  § 3729(b)(1).  Although Rule 9(b) permits knowledge to be "alleged generally" as compared to fraud or mistake, it does not excuse the requirement of a sufficient factual basis to support allegations of knowledge.  *Iqbal*, 556 U.S. at 686.  The complaint must allege facts sufficient to find the requisite knowledge for FCA liability.

"[T]here are two ways to adequately plead presentment" of a false claim under Rule 9(b).  *Grant*, 912 F.3d at 197.  First, a relator can "allege with particularity that specific false claims actually were presented to the government for payment."  *Id.* (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013)).  The relator must, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*, 176 F.3d at 784).  Second, the relator "can allege a pattern of conduct that would 'necessarily have led[ ] to submission of false claims' to the government for payment."  *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457).

To state a cause of action under § 3729(a)(1)(C), a relator must allege that defendants "conspired" to commit a violation of § 3729(a)(1).  Therefore, to state a conspiracy claim under the FCA, a relator must show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim reimbursed by the government, and (2) at least one act performed in furtherance of that agreement.  *U.S. ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010).  The conspirators must have "shared a specific intent to defraud the Government."  *Id.*

### III.    ANALYSIS

The allegations in the Amended Complaint are insufficient to allege that Dr. Frank submitted or conspired to submit false claims to the government. First, nothing in the Amended Complaint suggests that Dr. Frank submitted false claims to the DOL. Relators claim that "[f]or a period of time, Dr. Frank provided disability ratings and also signed Letters of Medical Necessity for RAH patients." (ECF No. 29 at 11.) However, they do not assert that the ratings and letters Dr. Frank provided were false or fraudulent in any way. Relators specifically allege that Dr. Jenkins "inflated" and "exaggerated" disability ratings and letters of medical necessity for RAH patients but do not make similar claims against Dr. Frank. (*Id.* at 10.)

Second, Relators fail to allege that Dr. Frank accepted kickbacks for referrals with particularity. The Amended Complaint generally alleges that RAH compensated Dr. Frank in exchange for patient referrals but it does indicate the value of the kickbacks, allege when the kickbacks occurred, or connect the payments to certain patients or claims submitted to the government. Relators' most detailed claim is that "[o]n or about May or June 2016, Dr. Frank persuaded a patient to call A.J. Frank, Dr. Frank's son and a RAH employee, about receiving services from RAH." (*Id.*) However, the claim is unsupported by allegations that Dr. Frank was compensated for the referral. The AKS prohibits accepting payments in exchange for referrals for federally-funded health care services. It does not prohibit a doctor from referring a patient to necessary health care services in good faith. Since Relators fail to assert that Dr. Frank received anything of value in exchange for referring the patient to RAH on or about May or June 2016, the assertion fails to support an AKS violation.

Finally, the Amended Complaint does not suggest that Dr. Frank conspired to present false claims to the government for reimbursement. Relators do not explicitly allege who Dr. Frank

7

conspired with or what Dr. Frank conspired to do. Instead, Relators appear to allege that Dr. Frank conspired with A.J. Frank to submit false claims to the government by allowing A.J. Frank to access his patient files.    (*Id.* at 11.) The allegations in the Amended Complaint fail to support such a theory. Relators may allege that Dr. Frank allowed his son to review confidential patient information, but they do not allege facts suggesting that Dr. Frank did so with intent to defraud the government.    Relators also fail to detail the contours and duration of the alleged conspiracy between Dr. Frank and A.J. Frank.

## IV.    CONCLUSION

After a thorough review of the record and Defendant Dr. Peter Frank's Motion to Dismiss (ECF No. 42), the court **GRANTS** the Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff-Relators' FCA false presentment claim (§ 3729(a)(1)(A)) and FCA conspiracy claim (§ 3729(a)(1)(C)) against Defendant Dr. Peter Frank.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 27, 2020
Columbia, South Carolina

8