**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| United States of America, *ex rel* Tanja Adams, Kianna Curtis, Mindy Roberts, Ashley Segars, and Tamara Williford, *Relators*, <br><br> Plaintiffs, <br><br> v. <br><br> Remain at Home Senior Care, LLC and Tim Collins, <br><br> Defendants. | Civil Action No.: 1:17-cv-01493-JMC <br><br> **ORDER AND OPINION** |

Before the court is the above-captioned Plaintiffs' Motion to Compel Discovery from Defendants Remain at Home Senior Care, LLC ("RAH") and Tim Collins. (ECF No. 131.) For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART WITHOUT PREJUDICE** the Motion to Compel Discovery. (*Id.*)

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Tanja Adams, Kianna Curtis, Mindy Roberts, Ashley Segars, and Tamara Williford, all licensed nurses formerly employed by RAH, brought a *qui tam* lawsuit against Collins and RAH, RAH's owners, and other individuals and entities alleging that Defendants engaged in illegal referral and fraudulent medical necessity practices and conspired to present these false claims to the government to receive payment from federal health care programs, including the Department of Labor's ("DOL") Division of Energy Employees Occupational Illness

1

Compensation Program ("DEEOIC"),[1] in violation of the Federal False Claims Act. (ECF No. 29 at 1–2 ¶¶ 1–2, 4 ¶ 11, 8–13 ¶¶ 15–25.) Plaintiffs further asserted they each "suffered employment retaliation because of their efforts to stop Defendants' continued violations of the False Claims Act, 31 U.S.C. §§ 3729–3733." (*Id*. at 2 ¶ 3, 4 ¶ 11.)

The court has since dismissed all claims without prejudice against former Defendants Brian Carrigan, Dawn Blackwell, A.J. Frank, Dr. Peter Frank, Dr. Francis Jenkins II, FHJ PULM, LLC, Nuclear Workers Institute of America ("NWIA"), Twilight Health, LLC, and RAH Holdings, LLC, as well as False Claims Act conspiracy claims alleged against RAH and Collins under 31 § 3729(a)(1)(C).[2] (*See* ECF Nos. 94, 95, and 96.) What remains are an "FCA false presentment claim (§ 3729(a)(1)(A)) . . . against Collins and [an] FCA false presentment claim (§ 3729(a)(1)(A)) and retaliation claim (§ 3730(h)) . . . against RAH." (*See* ECF No. 94 at 15.)

Plaintiffs filed the instant Motion to Compel Discovery from Defendants in January 2021. (ECF No. 131.) The above-captioned Defendants filed a Response in Opposition to the Motion (ECF No. 144), to which Plaintiffs filed a Reply (ECF No. 147). Plaintiffs seek to compel (1) RAH to "provide full and complete responses to Plaintiffs' written discovery requests;" (2) RAH to allow Plaintiffs entry into RAH's offices, including the file room, for inspection "and other purposes;" and (3) RAH and Collins to "produce copies of all documents requested by Plaintiff." (*Id*. at 1.)

---

[1] The DOL's authority stems from the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), passed by Congress in 2000 and subsequently amended under 42 U.S.C. § 7384.

[2] However, after completing several depositions, Plaintiffs have filed a pending Motion to Amend Complaint again naming the above individuals and entities (as well as another individual and entity) as Defendants, and re-alleging various claims the court dismissed. (ECF No. 153.)

## II.    LEGAL STANDARDS

A. Discovery Generally

Amended Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case. *E.g.*, *Gordon v. T.G.R. Logistics, Inc.*, Case No. 16-cv-00238-NDF, 2017 WL 1947537, at *2 (D. Wyo. May 10, 2017). "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through 'clarifying, explaining and supporting its objections with competent evidence.'" *Wilson v. Decibels of Or., Inc.*, Case No. 1:16-cv-00855-CL, 2017 WL 1943955, at *2 (D. Or. May 9, 2017) (quoting *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (internal citations omitted)).

A discovery request is relevant "if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Wilson*, 2017 WL 1943955, at *5 (quoting *Jones v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)). "While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been 'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *Martin v. Bimbo Foods Bakeries Distribution, LLC*, 313 F.R.D. 1, 5 (E.D.N.C. 2016) (quoting *EEOC v. Sheffield Fin. LLC*, No. 06-889, 2007 WL 1726560 (M.D.N.C. June 13, 2007)) (internal citations omitted). "Relevance is not, on its own, a high bar." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).

Rule 26 therefore also imposes the proportionality requirement, *id.*, which "mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Gilmore v. Jones*, No. 3:18-CV-00017, 2021 WL 68684, at *3-4 (W.D. Va. Jan. 8, 2021). Such considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("[T]he discovery rules are given 'a broad and liberal treatment[.]'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). That said, discovery is not limitless and the court has the discretion to protect a party from "oppression" or "undue burden or expense." FED. R. CIV. P. 26(c).

B. <u>Motions to Compel</u>

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Oppenheimer v. Episcopal Communicators, Inc.*, No. 1:19-CV-00282-

4

MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020); *see Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-CV-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citation omitted). "Thus, once the moving party has made 'a *prima facie* showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery.'" *Gilmore*, 2021 WL 68684, at *3-4 (quoting *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

The court has broad discretion in deciding to grant or deny a motion to compel. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-CV-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

### III.    ANALYSIS

Plaintiffs seek to compel Defendants to (1) answer Interrogatories 14 and 15; (2) allow Plaintiffs' entry onto RAH's property for a physical inspection of records; and (3) respond to various Requests for Production ("RFP"). (*See* ECF No. 131 at 4–11.) The court examines each of these categories of discovery requests in turn.

A.     Interrogatories 14 and 15

Interrogatories 14 and 15 ask RAH to describe the relationship between itself and two non-parties: Twilight Health, LLC and RAH Holdings, LLC, "including but not limited to details of any financial relationship from 2012 to present." (ECF No. 131-1 at 9 ¶¶ 14–15.) Plaintiffs argue that "the business structure of [RAH], including any relationship to other entities, is relevant to discovering the extent of the fraud alleged in the Amended Complaint." (ECF No. 131 at 4.) Plaintiffs further explain that Twilight and RAH Holdings purportedly each share "some or all of the same owners, managers, and employees as RAH," and that both entities have each utilized another entity, NWIA–which is wholly owned by RAH–"for the purpose of assisting eligible persons in obtaining a 'white card' for care under the EEOICPA. (ECF No. 147 at 6; *see also* ECF No. 29 at 9 ¶ 16, 12 ¶¶ 24–25.) Plaintiffs cite to *Pertuis v. Front Roe Rests, Inc.*, 817 S.E.2d 273 (S.C. 2018), a South Carolina Supreme Court case, to insist the relationship between RAH and these non-party entities can determine whether the use of the corporate structure's promise of limited liability is illegitimate. (ECF No. 147 at 5–6.)

Defendants, on the other hand, argue that Plaintiffs' requests fall outside the scope of the claims at issue in the lawsuit because both Twilight and RAH Holdings were dismissed from the instant lawsuit and no claims remain pending against them. (ECF No. 144 at 6.) Defendants assert that RAH's relationships with these entities do not relate "in any way" to RAH's alleged unnecessary or undelivered claims billed to the DOL or to RAH's alleged kickback scheme. (*Id*.) Defendants further accuse Plaintiffs of "fishing for facts to enable them to file a Second Amended Complaint to add Twilight or RAH Holdings as additional parties" and argue that Plaintiffs "cannot use the discovery process to uncover claims that they do not have a good faith basis to make." (*Id*. at 6–7.)

Here, the court finds Plaintiffs' interrogatory requests for information pertaining to the relationship between RAH and entities Twilight and RAH Holdings are not relevant to the remaining claims. The court has been unable to locate any precedent under the False Claims Act to suggest an amalgamation of multiple entities using a "single business enterprise theory"—which is available under state law—somehow broadens the scope of discovery for Plaintiffs in federal court for the instant claims.[3]

Moreover, Plaintiffs have not demonstrated how Twilight and RAH Holdings relate to the remaining allegations at issue in this case. Plaintiffs allege that RAH, Twilight, and RAH Holdings share "some or all of the same owners, managers, and employees as RAH" (ECF No. 147 at 6; *see also* ECF No. 29 at 12 ¶¶ 24–25), and–like RAH–both entities rely on the same RAH-owned non-profit organization, NWIA, for "the purpose of assisting potentially eligible persons in obtaining a 'white card'" and for patient referrals. However, Plaintiffs do not sufficiently explain how knowledge of RAH's financial relationships with Twilight and RAH Holdings would be relevant to their claims alleging that RAH: illegally solicited the patients specified in Exhibit A of the Amended Complaint; forged letters of medical necessity; or knowingly billed the DOL for false or fraudulent claims. Plaintiffs likewise have not asserted these entities worked jointly with, were involved in, or otherwise influenced RAH's claims. These interrogatories are thus irrelevant to the instant claims before the court.

---

[3] In *Pertuis*, the Supreme Court of South Carolina formally adopted the "single business enterprise theory," which describes the amalgamation of multiple entities that "have unified their business operations and resources to achieve a common business purpose." 817 S.E.2d at 279 ("In some instances, . . . certain enterprises choose to conduct their business in such a way that the law should no longer regard the various corporations as distinct entities."). Significantly, "the single business enterprise theory requires a showing of more than the various entities' operations are intwined . . . [c]ombining multiple corporate entities into a single business enterprise requires further evidence of bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions." *Id*. at 281; *see also Walbeck v. I'On Co., LLC*, 827 S.E.2d 348 (S.C. Ct. App. 2019).

Additionally, the court previously dismissed RAH Holdings and Twilight, as well as a conspiracy claim involving these entities and RAH, from this case. In its Order partially granting Defendants' Motion to Dismiss, the court found that Plaintiffs' "claims against RAH are insufficient to suggest that RAH conspired to present false claims to the government." (ECF No. 95 at 11.) The court further explained that "[a]lthough the Amended Complaint contains sweeping conclusory allegations against Twilight and RAH Holdings, Exhibit A does not identify a single patient [on behalf of which] Twilight or RAH Holdings submitted claims . . . . In fact, Exhibit A does not even reference Twilight or RAH Holdings."[4] (ECF No. 94 at 14; *see also* ECF Nos. 29, 29-1.) Such findings lend additional support to properly narrowing the scope of discovery to the remaining claims in this case. Accordingly, the court **DENIES** Plaintiffs' Motion to Compel responses to Interrogatories Nos. 14 and 15.

      B.     <u>Request to Inspect RAH Property</u>

The court next turns to Plaintiff's request to inspect RAH's offices, including the file room. Pursuant to Federal Rule of Civil Procedure 34(a)(2), a party may serve on any other party a request within the scope of Rule 26(b) "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." A request for inspection must "describe with reasonable particularity each item or category of items to be inspected" and "specify a reasonable time, place, and manner for the inspection and for performing the related acts." FED. R. CIV. P. 34(b)(1)(A), (B). However, the "entry upon a party's premises may entail greater burdens and risks than mere production of documents," therefore courts must

---

[4] As the court previously noted, "Exhibit A" to the Amended Complaint (ECF No. 29-1) is a chart created by Plaintiffs that purportedly lists services RAH and NWIA provided to certain patients. (*see* ECF No. 94 at 3).

engage in "a greater inquiry into the necessity for inspection." *Belcher v. Bassett Furniture*, 588 F.2d 904, 908 (4th Cir. 1978). Accordingly, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Id*.

Plaintiffs believe an inspection of RAH's premises is necessary because "RAH has been accused of widespread fraud, including but not limited to altering medical records prior to submission to the Government" and RAH has alleged Plaintiff Ashley Segars destroyed files. (ECF No. 131 at 10.) Plaintiffs seek to examine the physical files located in RAH's offices, including the file room. (ECF No. 147 at 7 n.1.) Plaintiffs point to the testimony of former RAH owner Dawn Blackwell, who stated that RAH "retains all notes and records on paper for all white card patients since its inception . . . [and] that these records are kept in the file room in RAH's offices." (ECF No. 147 at 8; *see also* ECF No. 147-1 at 4:16–6:6.) Plaintiffs believe an examination of such physical files on RAH's premises "is expected to uncover evidence of forgery . . . and discrepancies between the physical notes turned in by RAH's employees for billing and the claims which were ultimately submitted to the Government." (ECF No. 147 at 8.)

Defendants counter that "the physical layout of RAH's offices or its file room is [not] at issue." (ECF No. 144 at 8.) Defendants further allege Plaintiffs' request to inspect was akin to boilerplate language, and they failed to meet their burden to (1) establish the necessity of an inspection and (2) specify any items to be inspected with the "reasonable particularity" required by Rule 34. (ECF No. 144 at 8; *see also* ECF No. 131-7.) Defendants also assert their concern that Plaintiffs would attempt to question employees should they be allowed to enter the premises. *Id*.

9

Here, the court finds Plaintiff's request to inspect RAH's premises is overly broad and disproportional to the needs of the case. It is true Plaintiffs specify the date and time ("on the 30th day after service hereof at 11:00 am or at a time mutually agreed upon by the parties"), manner ("inspection, copying, photographing, or any purposes related hereto"), and location of their request ("[t]he property to be inspected is this Defendant's offices, including the file room and any and all contents of the file room located at 330 Research Drive, Suite 110, Athens, GA 30605"). (*See* ECF No. 131-2 at 2.)  Yet the request is otherwise too general and falls well short of describing the items to be inspected with "reasonable particularity."  For instance, Plaintiffs' initial request for inspection and subsequent supportive briefing offer no adequate explanation for the necessity to inspect RAH's offices generally.  Plaintiffs only specifically describe their interest in the contents of RAH's file room–the physical records that may highlight inconsistencies from the billing claims and notes submitted by RAH to the Government.  Plaintiffs offer no additional specificity regarding the timeframe of interest or specific patient files or other records they seek to compare.  Further, the court observes Blackwell's testimony reflects the requisite records may not all be present at RAH's offices.  (*See* ECF No. 147-1 at 4:20–5:1 (suggesting some of the relevant records may be stored in an offsite storage unit).)

Plaintiffs have not addressed why an inspection of RAH's file room is necessary to address these allegations, nor why a standard RFP would not be sufficient.  By contrast, Defendants would likely be significantly burdened if the court granted Plaintiffs' request to inspect RAH's premises, in part because RAH is presently operating its business.  Accordingly, the court **DENIES** Plaintiffs' request to inspect RAH's premises.

C.  Requests for Production of Documents

Finally, Plaintiffs seek to compel Defendants' responses to approximately forty-five (45) RFPs. Plaintiffs contend they hope to uncover the extent of fraud purportedly conducted by Defendants through Defendants' business records as well as their communications and documents with third parties, including parties that have since been dismissed from the case. (*See* ECF Nos. 29, 131, 147.) Defendants argue the disputed requests are wholly irrelevant or overbroad and unduly burdensome on their face. (*See* ECF No. 144.) The court examines the following categories of Plaintiffs' RFPs in turn: (1) requests related to Defendants' business practices, including medical, employment, payment, and other records; and (2) requests related to Defendants' communications, financial relationships, and other records with third parties.

*(1) RFPs Related to Defendants' Business Practices*

Plaintiffs' RFP Nos. 5–12, 14–17, 23, 35–37, and 45–47 directed to RAH and Nos. 5–10, 13–14, and 21 directed to Collins request a variety of information encompassing employment, financial, medical, and other records. (*See* ECF No. 131-3 at 7, 9–11, 12–13; ECF No. 131-4 at 7–9.)

Specifically, Plaintiffs' RFP Nos. 5, 7–9, and 12 directed to RAH and Nos. 5 and 7–10 directed to Collins pertain to various materials and communications, including Electronically Stored Information, which relate to the subject matter of this litigation, communications between Defendants, and/or communications between RAH and its shareholders. (*See* ECF No. 131-3 at 7, 9; ECF No. 131-4 at 7.) Regarding these specific records, Defendants do not appear to contest the relevance of such requests so much as they contend the requests are overbroad and unduly burdensome. The court agrees that these RFPs are overbroad, as Plaintiffs seek, *inter alia*, "all reports or communications between this Defendant and its owners or shareholders since February

11

3, 2012" and "[a]ll materials and communications this Defendant sent to or received from any other individual or entity . . . regarding the subject of this litigation" (ECF No. 131-3 at 7–8)—particularly since "the subject of this litigation" apparently extends (at least in Plaintiffs' minds) throughout Defendants' business practices, as Plaintiffs believe RAH's fraud is "vast" (*see* ECF No. 147 at 3). As discussed *supra*, this case's remaining claims do not support such broad swathes of discovery. Accordingly, the court **DENIES** Plaintiffs' Motion to Compel RFP Nos. 5, 7–9, and 12 directed to RAH and Nos. 5 and 7–10 directed to Collins.

RFP No. 6 directed to RAH and No. 6 directed to Collins specifically request "[c]opies of any and all other litigation pleadings involving [these] Defendant[s]." (*See* ECF No. 131-3 at 7; ECF No. 131-4 at 7.) Defendants claim RAH provided supplemental responses to this RFP and it should "no longer be in dispute." (ECF No. 144 at 2.) However, it appears Defendants dispute the request towards Collins, asserting "there is a fundamental disagreement between the parties regarding the scope of what is at issue in this litigation." (*Id.*) The court **GRANTS** the Motion to Compel RFP No. 6 directed to RAH, and RFP No. 6 directed to Collins, to the extent Defendants have not already produced these pleadings.

Plaintiffs' RFP Nos. 10–11, 14–17, 23, 35–36, and 45–47 directed to RAH and Nos. 13 and 21 directed to Collins include requests for medical records, documents, and materials, and additional records relating to RAH's organizational structure, financial and payment records, and employee information, including incentive payments made to employees. (ECF No. 131-3 at 8–13; ECF No. 131-4 at 8–9.) Plaintiffs allege the requested documents are relevant to addressing the specific claims asserted in Plaintiffs' Amended Complaint, discovering the extent of Defendants' alleged fraud and enrichment from the fraudulent scheme, and identifying potential witnesses for their case. (ECF No. 131 at 6–11.) Defendants generally counter that a majority of

12

Plaintiffs' requests are "wholly irrelevant" to Plaintiffs' claims that Defendants defrauded the government. (*See* ECF No. 144 at 10–13, 15–16.) Defendants also assert arguments specific to certain of Plaintiffs' RFPs, which are further detailed below.

The court generally views Plaintiffs' RFP Nos. 10–11, 17, 23, 35–36, and 45–46 directed to RAH and No. 21 directed to Collins as relevant to Plaintiffs' allegations that Defendants violated the False Claims Act, as they broadly concern issues surrounding Defendants' organizational structure, financial and payment records, and employee information. However, the undefined temporal and subject-matter scope of many of these requests are overbroad. Thus, the court **GRANTS IN PART** Plaintiffs' Motion to Compel RFP Nos. 10–11, 17, 23, 35–36, and 45–46 directed to RAH and No. 21 directed to Collins. The court limits the scope of such documents to the time period in which Plaintiffs were employed with RAH–from approximately May 2014 to March 2018–and to the allegations pertaining to the specific patients identified in Plaintiffs' Amended Complaint. (ECF No. 29 at 5–8 ¶ 13(a)–13(e); *see* ECF No. 29-1.) *See also U.S. ex rel. McCartor v. Rolls-Royce Corp.*, No. 08-00133, 2013 WL 5348536, at *7 (S.D. Ind. Sept. 24, 2013) (explaining that discovery should "hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy").

Next, in Defendants' response to RFP Nos. 14–16 directed to RAH, which requests any documents and records pertaining to incentive payments made by RAH, Defendants argue that while RAH has committed to producing "responsive non-privileged documents . . . reflecting or discussing non-employee payments," payments to RAH employees "are exempt from the Anti-Kickback Statute pursuant to 42 U.S.C. § 1320(a)–7(b)(3)(B)." (ECF No. 144 at 10.) Yet the court disagrees with Defendants' assertion that all payments to employees are totally exempt from the Anti-Kickback Statute. The Anti-Kickback Statute's exemption does not cover any and all

13

such payments; it simply exempts payments to employees for "the provision of *covered* items or services." 42 U.S.C. § 1320(b)(3)(B) (emphasis added).  Further, "the fact finder may infer that payments were intended to be kickbacks based on evidence that the recipient was grossly overpaid for any legitimate services he provided."  *See United States v. Berkeley Heartlab, Inc.*, No. 14-00230, 2017 WL 3671562, at *3 (D.S.C. Aug. 22, 2017).  The subject matter of these RFPs, when taken together with other evidence, may shed light on the relationship between RAH and patients in relation to the allegedly fraudulent scheme.  Yet, as discussed above, the court finds it necessary to narrow the scope of these requests. The court hereby **GRANTS IN PART** Plaintiffs' Motion to Compel RFP Nos. 14–16 directed to RAH.  The court limits the scope of the records to the period of time when Plaintiffs were employed with RAH–from approximately May 2014 to March 2018– and to the allegations pertaining to the specific patients identified in Plaintiffs' Amended Complaint.  (ECF No. 29 at 5–8 ¶ 13(a)–13(e); *see* ECF No. 29-1.)

Further, in opposing RFP No. 35 directed to RAH and No. 13 directed to Collins, which requests certain financial information (including tax returns and profit and loss statements), Defendants allege that "a litigant is not entitled to discovery of sensitive financial information, including tax returns, until the court has ruled that the litigant is entitled to punitive damages." (ECF No. 144 at 15 (citing *Moore v. DAN Holdings, Inc.*, No. 12-00503, 2013 WL 1833557, at *14 (M.D.N.C. Apr. 30, 2013)).) However, the court finds these records are relevant.  Unlike in *Moore*, Plaintiffs do not allege they seek the requested records to determine "punitive damages"; instead, Plaintiffs intend to uncover to what extent Defendants monetarily benefited from the alleged fraudulent scheme.  *See Schaefer v. Fam. Med. Centers of S.C., LLC*, No. 3:18-CV-02775-MBS, 2019 WL 5893632, at *8 (D.S.C. Aug. 5, 2019) (granting an RFP for state and federal tax returns in a case alleging violations of the False Claims Act, finding the RFP was "relevant to

14

Plaintiff's theory of fraud," observing Defendants were only required to produce such documents "within their possession, custody, or control," and noting a previously entered "confidentiality order should resolve any concern[s]" regarding privacy and confidentiality).  Accordingly, the court believes that Plaintiffs can explore this issue through relevant discovery and hereby **GRANTS IN PART** Plaintiffs' Motion to Compel RFP No. 35 directed to RAH and No. 13 directed to Collins.  For the reasons set forth above, the court limits the scope of the records to the period of time covering 2014 through 2018.

In response to Plaintiffs' RFP No. 47 directed to RAH, RAH asserts it "already produced all policies in its possession, custody, and control."  (ECF No. 144 at 13.)  Plaintiffs have not specifically responded to this assertion, nor voiced any suspicions that RAH is withholding such information. The court thus **DENIES** Plaintiffs' Motion to Compel RFP No. 47 directed to RAH.

Finally, Plaintiffs' RFP No. 37 directed to RAH and No. 14 directed to Collins request "all records of any property leased or owned by Defendant."  (*See* ECF No. 131-3 at 12; ECF No. 131-4 at 8.)  Plaintiffs allege the office space Defendants provided is "relevant to determining the value provided to these physicians in exchange for referrals." (ECF No. 147 at 12.)  Yet, the court agrees with Defendants that the requests for records involving Defendants' property have no bearing to Plaintiffs' allegations that Defendants knowingly presented false claims for payment to federal healthcare programs, and RAH purportedly paid kickbacks to patients.  Accordingly, the court **DENIES** Plaintiffs' Motion to Compel RFP No. 37 directed to RAH and No. 14 directed to Collins.

*(2)     RFPs Related to Defendants' Third-Party Relationships*

Plaintiffs' RFP Nos. 18–21, 39,[5] 50–54, 56, 58–60 and 62 directed to RAH and Nos. 12 and 22 directed to Collins specifically request records relating to Defendants' relationships and communications with third-party individuals and entities, some of which were originally named in Plaintiffs' Amended Complaint. (*See* ECF No. 131-3 at 10–11, 14–15; ECF No. 131-4 at 8–9.) Plaintiffs seek to compel records pertaining to the financial relationships, communications, and agreements among Defendants and various health providers, including Twilight, RAH Holdings, and NWIA, as well as doctors, other home EEOICPA home health care providers, and individuals related to the purported fraudulent scheme. (*Id.*) Plaintiffs assert their requests are relevant to exploring the depth of the "comprehensive fraud scheme" alleged in their Amended Complaint. (ECF Nos. 29, 131 at 7–11.) In opposition, Defendants contend the requested records are "wholly irrelevant" because they have no bearing on the allegations alleged in the Amended Complaint or that Plaintiffs have not made specific allegations of fraudulent conduct pertaining to named or unnamed third parties. (*See* ECF No. 144 at 11–13.) Further, Defendants assert they have produced records–specifically those concerning letters of medical necessity–relevant to certain of the patients identified in Plaintiffs' specific claims. (*Id.* at 14; *id.* at n.3.)

Here, the above-mentioned RFPs, as written, are not relevant to Plaintiffs' remaining presentment and retaliation claims. Similar to the interrogatories examined above, these RFPs fall outside the scope of claims that survived Defendants' Motion to Dismiss. (*See* ECF No. 94–96.) For example, the financial relationship between NWIA and RAH, including any payments for patient referrals, is simply not relevant to the remaining claims before the court. Nor is the request

---

[5] It appears Plaintiffs mistakenly referred to RFP No. 39 as No. 38 in their Motion to Compel. (ECF No. 144 at 13.)

for "any and all documents relating to real and personal property owned by [Collins] and [non-parties] Dawn Blackwell, Brian Carrigan, Dr. Francis Jenkins, II, Dr. Peter Franks, or A.J. Franks." (ECF No. 131-4 at 9.)  The court thereby **DENIES** Plaintiffs' Motion to Compel RFP Nos. 18–21, 39, 50–54, 56, 58–60 and 62 directed to RAH and Nos. 12 and 22 directed to Collins.

## IV.     CONCLUSION

After careful consideration, the court **GRANTS IN PART** and **DENIES IN PART WITHOUT PREJUDICE** Plaintiffs' Motion to Compel Discovery as set forth above.  (ECF No. 131.)  The court notes that the parties shall continue to comply with the court's previously-entered Confidentiality Order.  (ECF No. 132.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 2, 2021
Columbia, South Carolina