**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | Civil Action No.: 1:17-cv-01493-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Ex rel. Tanja Adams, Kianna Curtis, Mindy | ) | |
| Roberts, Ashley Segars, and Tamara | ) | |
| Williford, | ) | |
| | ) | **ORDER AND OPINION** |
| Plaintiffs-Relators, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Remain at Home Senior Care, LLC and | ) | |
| Tim Collins, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiffs-Relators Tanja Adams, Kianna Curtis, Mindy Roberts, Ashley Segars, and

Tamara Williford (collectively "Plaintiffs-Relators"), on behalf of the United States of America

(the "United States" or the "Government") and themselves, bring this *qui tam* action against

Defendants Remain at Home Senior Care, LLC ("RAH") and Tim Collins ("Collins") alleging that

their actions violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33.[1] (ECF No. 29.)

This matter is before the court pursuant to Plaintiffs-Relators' Motion to Amend their First

Amended Complaint. (ECF No. 153.) Specifically, in their proposed Second Amended Complaint

(the "SAC"), Plaintiffs-Relators seek to add as Defendants Nuclear Workers Institute of America

---

[1] "Under the FCA, private individuals known as relators may file *qui tam* civil actions against alleged fraudsters on behalf of the United States [G]overnment." *U.S. ex rel. Lanahan v. Coun[t]y of Cook*, Case No. 17 C 5829, 2020 WL 6894395, at *6 (N.D. Ill. Nov. 24, 2020) (citing *U.S. ex rel. Watson v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013); 31 U.S.C. § 3730)). "If the Government does not intervene in the action, as here, a relator may proceed with the action solo but still on the Government's behalf." *Id.* (citing 31 U.S.C. § 3730(c)(3)). "If successful, a relator is eligible to receive a percentage of the total recovery." *Id.* (citing § 3730(d)(1)–(2)).

("NWIA"), Brian Carrigan ("Carrigan"), Dawn Blackwell ("Blackwell"), Dr. Francis Jenkins, II ("Dr. Jenkins"), FHJ PULM, LLC ("FHJ"), Dr. Peter Frank ("Dr. Frank"), A.J. Frank ("A.J. Frank"), Twilight Health, LLC ("Twilight"), and RAH Holdings, LLC ("RAH Holdings") (collectively "Original Defendants") for FCA violations, (*id.*), all of whom the court dismissed from Plaintiffs-Relators' First Amended Complaint. (*See* ECF Nos. 94–96; 153-1 at 11–18.) Plaintiffs-Relators also seek to add a new cause of action pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, against Carrigan and two (2) new Defendants, RAH DEV, LLC ("RAH DEV") and Monica Chase ("Chase"). (ECF No. 153-1 at 43 ¶ 149–44 ¶ 157.) For the reasons stated herein, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs-Relators' Motion to Amend the First Amended Complaint. (ECF No. 153.)

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs-Relators are licensed nurses formerly employed by RAH. (ECF No. 29 at 4 ¶ 11.) Plaintiffs-Relators filed their original Complaint on June 7, 2017, alleging that Original Defendants fraudulently submitted claims to the Department of Labor ("DOL") under the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. §§ 7384–85. (ECF No. 1 at 1–2 ¶ 1.) Plaintiffs-Relators allege that the EEOICPA compensates eligible individuals who are diagnosed with certain conditions while employed at specific Department of Energy ("DOE") facilities or awarded benefits under the Radiation Exposure Compensation Act ("RECA"), 42 U.S.C. § 2210. (ECF No. 1 at 11 ¶ 24.)

On September 16, 2019, Plaintiffs-Relators filed a First Amended Complaint, contending that Original Defendants defrauded the United States by: (1) "fraudulently recruiting patients" to

participate in the Division of Energy Employees Occupational Illness ("DEEOIC") Program[2]; (2) "fraudulently providing letters of medical necessity" to allow patients to receive unnecessary benefits under the EEOICPA; (3) "forging signatures on renewal letters of medical necessity for benefits under the EEOICPA"; (4) fraudulently inducing illegitimate EEOICPA impairment ratings; (5) "receiving kickbacks and paying kickbacks for patient referrals under the EEOICPA"; (6) "providing illegal payment[s] and gifts to patients in the EEOICPA Program"; (7) billing the DOL for EEOICPA home health care provider services that were actually provided by "unqualified patient relatives"; (8) billing the DOL for registered nurse ("RN") or licensed practical nurse ("LPN") services under the EEOICPA when services were actually provided by a certified nurse assistant ("CNA"); (9) billing the DOL for unnecessary medical services under the EEOICPA, and/or; (10) "billing the DOL for services not rendered under the EEOICPA." (ECF No. 29 at 1–2 ¶ 1.) Plaintiffs-Relators alleged that Original Defendants conspired to present these false claims to the Government in order to receive payment from federal health care programs. (*Id.* at 19–21.) In addition, Plaintiffs-Relators maintained that RAH, Twilight, and RAH Holdings retaliated against them for objecting to the alleged FCA violations. (*Id.* at 20 ¶ 45–21 ¶ 49.) Consequently, Plaintiffs-Relators claimed that all Original Defendants violated § 3729(a)(1)(A) and (C) of the FCA and RAH, Twilight, and RAH Holdings violated § 3730(h). (ECF No. 29 at 19–21.)

In August 2020, the court dismissed without prejudice all claims against Carrigan, Blackwell, Frank, NWIA, Twilight, RAH Holdings, Dr. Frank, Dr. Jenkins, and FHJ as well as the FCA conspiracy claims (§ 3729(a)(1)(C)) against Collins and RAH. (ECF Nos. 94–96.) As a result, only the FCA false presentment claim (§ 3729(a)(1)(A)) against Collins and the FCA false

---

[2] Plaintiff-Relators contend that the DEEOIC Program is a segment of the EEOICPA applicable to DOE employees. (ECF No. 1 at 1-2 n.1.)

presentment claim (§ 3729(a)(1)(A)) and retaliation claim (§ 3730(h)) against RAH remained. (ECF Nos. 94–96.)

On February 21, 2021, Plaintiffs-Relators filed the instant Motion to Amend the First Amended Complaint. (ECF No. 153.) In the SAC, Plaintiffs-Relators make the same FCA allegations as were asserted in the First Amended Complaint against all Original Defendants, seeking to re-add NWIA, Carrigan, Blackwell, Dr. Jenkins, FHJ, Dr. Frank, A.J. Frank, Twilight, and RAH Holdings as Defendants. (ECF No. 153-1 at 2–3 ¶ 1.) Plaintiffs-Relators also include a new allegation against Carrigan, RAH, and Chase, asserting they procured unauthorized investigative consumer reports on each of Relators for the purposes of harassment and retaliation in violation of the FCRA. (*Id.* at 3 ¶ 4.)

RAH and Collins filed their Response in Opposition to Plaintiffs-Relators' Motion to Amend (ECF No. 158) on March 8, 2021, to which Plaintiffs-Relators filed their Reply (ECF No. 165) on March 22, 2021. RAH and Collins filed a Sur Reply on March 29, 2021. (ECF No. 167.)

## II.    JURISDICTION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the laws of the United States, specifically 31 U.S.C. §§ 3732(a) and 3730(b), which empower district courts to hear claims arising under the FCA.

## III.    LEGAL STANDARD

A.    Motions to Amend pursuant to Rule 15

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend a pleading once, as a matter of course, within a certain time. *See* Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In the latter circumstances, "the court should freely give leave when justice so

requires." *Id. See, e.g.*, *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("Under Rule 15 of the Federal Rules of Civil Procedure, a 'court should freely give leave to amend when justice so requires.'" (quoting Fed. R. Civ. P. 15(a)(2)) (internal quotation marks omitted)). Thus, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d. 503, 509 (4th Cir. 1986). *See also Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019), *as amended* (Jan. 9, 2019) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." (quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010))).

B.    Pleading Requirements Generally under Rules 8 and 9

Substantive FCA claims must satisfy both Rule 8(a)'s plausibility requirement and Rule 9(b)'s particularity standard to survive a motion to dismiss. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016). More specifically, "[i]n considering a 12(b)(6) challenge to the sufficiency of a complaint, this Rule must be applied in conjunction with the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a)." *Jenkins v. Fed. Bureau of Prisons*, C/A No. 3:10-1968-CMC-JRM, 2011 WL 4482074, at *2 (D.S.C. Sept. 26, 2011). Rule 8(a) provides that to be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Rule 9(b) imposes a heightened pleading standard on fraud claims, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To meet this standard, an FCA plaintiff must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and

what he obtained thereby.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 784 (4th Cir. 1999)). *See also U.S. ex. rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 285 F. Supp. 3d 44, 47 (D.D.C. 2017) ("To allege fraud, a plaintiff must state the time, place, and content of the false misrepresentations, the fact misrepresented, and what was obtained or given up as a consequence of the fraud." (citing *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981))). These facts are often "referred to as the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Wilson*, 525 F.3d at 379 (citation omitted). Failure to comply "with Rule 9(b)'s particularity requirement for allegations of fraud is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5 (citing *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)).

## IV.    ANALYSIS

Plaintiffs-Relators seek to amend their Complaint to reincorporate numerous Defendants and claims, add Chase and RAH DEV, LLC as Defendants, bring a new FCRA claim, and include additional supporting allegations. They assert that allowing them to file the SAC "would serve justice and promote judicial efficiency" and "there would be no substantial or undue prejudice, bad faith, undue delay, or futility." (ECF No. 153 at 1.) RAH and Collins oppose the instant Motion asserting that the court should deny it for the following reasons:

- The proposed SAC's presentment claim is futile because it fails to meet Rule 9(b)'s particularity requirements, and fails to allege facts showing the who, what, when, where, and how of the allegedly false claims at issue;

- The proposed SAC fails to allege sufficient facts to support a conspiracy claim, and its conspiracy claim fails under the intracorporate conspiracy doctrine;

- The proposed SAC improperly lumps Defendants together and fails to allege which Defendant engaged in what conduct;

- The proposed SAC's allegations that Defendants acted as a single business enterprise are improper because federal rather than state law applies, the proposed SAC fails to

allege the requirements under federal law, and the proposed SAC fails to allege the elements under South Carolina law;

- Relators['] retaliation claim, improperly brought against *all Defendants*, fails because Relators can only assert a retaliation claim against their employer;

- Relators lack standing to assert an FCRA claim, and adding such a claim would be futile; and

- Relators violated the FCA's mandatory sealing requirements by failing to file the proposed SAC under seal when the SAC contains substantially different allegations, adds a new claim, and adds two new Defendants.

(ECF No. 158 at 5–6.) The court examines below each assertion by RAH and Collins about the SAC to determine whether Plaintiffs-Relators' should be allowed to file this pleading. Given that the parties focus their arguments on futility,[3] the court reviews the SAC to determine, inter alia, whether it would survive a motion to dismiss.

## A.     FCA False Presentment Claim

As the SAC's first claim, Plaintiffs-Relators allege that Defendants RAH, NWIA, Carrigan, Collins, Blackwell, Dr. Jenkins, FHJ, Dr. Frank, A.J. Frank, Health, RAH DEV, and RAH Holdings violated § 3729(a)(1)(A)[4] of the FCA by submitting claims or causing claims to be submitted for home health care services that (1) "violated the federal" Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b[5], (2) "were unnecessary," (3) were not appropriately provided or

---

[3] "A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'" *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). "A proposed amendment is also futile if the claim it presents would not survive a motion to dismiss." *Id.* (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)). In other words, "a district court may deny leave [for futility] . . . if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson*, 525 F.3d at 376.

[4] Section 3729(a)(1)(A) expressly states that "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1)(A).

[5] A claim submitted based on a violation of the Anti-Kickback Statute also constitutes a false or fraudulent claim under the FCA. *See* 42 U.S.C. § 1320a-7b(g). The AKS prohibits making or

were useless," and (4) "were provided by an individual who has a conflict of interest." (ECF No. 153-1 at 39 ¶¶ 122–125.) Plaintiffs-Relators further allege that the aforementioned Defendants violated 31 U.S.C. § 3729(a)(1)(B) by knowingly causing to be made or using "false records or statements, material to false claims." (ECF No. 153-1 at 39–40 ¶ 126.)

RAH and Collins argue that it would be futile for the court to allow these claims to proceed because they lack "sufficient particularity on the 'who, what, when, where, and how'" as required by Rule 9(b). (ECF No. 158 at 8.) In support of their argument, RAH and Collins specify that "while the proposed SAC mentions various individuals and entities more frequently than the Amended Complaint does, it still fails to identify any concrete or particularized examples of . . . [Original Defendants] actually presenting any claims to the Government that were paid." (*Id.* at 11.) Moreover, "[t]he proposed SAC still offers no particulars about how the purported fraudulent billing practices worked or where they took place" and "[Plaintiffs-]Relators identify no claim, no false content of any claim, and no payment or other benefit RAH obtained because of any claim." (*Id.* at 13.)

In support of their Motion to Amend, Plaintiffs-Relators contend that the SAC "describes how each of the Defendants together devised and implemented a comprehensive scheme in violation of the FCA to illegally recruit patients, to inflate the appearance of each patients' medical need in order to qualify the patients for home healthcare, to pay kickbacks to patients and others,

---

accepting payments to induce or reward referrals for federally funded health care services. § 1320a-7b(b). A plaintiff must plead AKS violations with particularity under Rule 9(b). *United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 730 (D.S.C. 2017) (citing *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) ("[E]lements of the AKS violation must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim")).

and ultimately to bill the United States for services not medically necessary and, in many cases, not rendered at all." (ECF No. 165 at 5.)

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . ."[6] 31 U.S.C. § 3729(a)(1)(A), (B). In false presentment cases under § 3729(a)(1)(A), a central question is "whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'" *U.S. ex rel. Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785–86). A "claim" is "any request or demand, whether under a contract or otherwise, for money or property that . . . is presented to an officer, employee, or agent of the United States." § 3729(b). "Claims arising under §§ 3729(a)(1)(A) and (B) of the FCA are fraud-based claims that must satisfy Rule 9(b)'s pleading standard." *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citing *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013)).

"To state a claim under the FCA [for violating 31 U.S.C. § 3729(a)(1)(A)], the plaintiff must prove: (1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter[7]; (3) the

---

[6] A defendant acts "knowingly" within the meaning of the act when the person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). Stated differently, the FCA "require[s] no proof of specific intent to defraud" in order for a defendant to have the requisite mental culpability. 31 U.S.C. § 3729(b)(1)(B).

[7] "Scienter under the FCA encompasses actual knowledge, deliberate indifference, and reckless disregard, but does not require proof of specific intent to defraud." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 634 (4th Cir. 2015) (citing 31 U.S.C. § 3729(b)(1)).

statement or conduct was material[8]; and (4) the statement or conduct caused the [G]overnment to pay out money or to forfeit money due." *U.S. ex rel. Harrison*, 352 F.3d at 913 (citing *Harrison*, 176 F.3d at 788). "[T]here are two ways to adequately plead [an (a)(1)(A)] presentment [claim] under Rule 9(b)." *U.S. ex rel. Grant*, 912 F.3d at 197. First, a relator can "allege with particularity that specific false claims actually were presented to the [G]overnment for payment." *Id.* (citing *U.S. ex rel. Nathan*, 707 F.3d at 457). The relator must, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*, 176 F.3d at 784)). In the alternative, the relator "can allege a pattern of conduct that would 'necessarily have led[ ] to submission of false claims' to the [G]overnment for payment." *Id.* (quoting *U.S. ex rel. Nathan*, 707 F.3d at 457). In false presentment cases under § 3729(a)(1)(A), a central question is "whether the defendant ever presented a false or fraudulent claim to the [G]overnment, resulting in a 'call upon the [G]overnment fisc.'"[9] *U.S. ex rel. Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785–86)). "The complaint must provide 'at least some explanation of the billing structure,' including where the defendant is alleged to have contracted directly with the Government." *U.S. ex rel. Cooley v. Carolina Wrecking, Inc.*, C/A No.: 2:17-0276-RMG, 2019 WL 236797, at *2 (D.S.C. Jan. 16, 2019) (quoting *U.S. ex rel. Grant*, 912 F.3d at 198).

Upon its review, the court observes that Plaintiff-Relators allege in the SAC conduct

---

[8] "A false statement is material if it has 'a natural tendency to influence, or be capable of influencing,' the Government's decision to pay." *United States v. Triple Canopy, Inc.*, 775 F.3d at 634 (quoting 31 U.S.C. § 3729(b)(4)).

[9] A "claim" is "any request or demand, whether under a contract or otherwise, for money or property that . . . is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b).

wherein Defendants RAH, NWIA, Carrigan, Collins, Blackwell, Dr. Jenkins, FHJ, Dr. Frank, A.J. Frank, Health, RAH DEV, and RAH Holdings "knowingly submitted claims to the DOL" under the EEOICPA to receive payment for services performed pursuant to illegal patterns and practices. (ECF No. 153-1 at 24 ¶ 62–37 ¶ 107.) The SAC's allegations outline specific conduct by each Defendant (*see id.* 10 ⁋ 18–18 ⁋ 30) and demonstrate how their actions violated the statutory law at issue. The court finds that these allegations support a plausible inference that these Defendants knowingly presented fraudulent statements to the Government for payment, and it paid Defendants as a result. The court further finds that these allegations sufficiently put Defendants on notice regarding their alleged misconduct. *Cf. U.S. ex rel. Grant*, 912 F.3d at 197 (acknowledging that one of Rule 9(b)'s purposes is to provide "defendants notice of their alleged misconduct, preventing frivolous suits, and eliminating fraud actions in which all the facts are learned after discovery apply with special force to FCA claims and the accompanying presentment requirement." (citations omitted)). If the foregoing allegations are accepted as true, Plaintiffs-Relators have sufficiently alleged a violation of § 3729(a)(1)(A) of the FCA by Defendants RAH, NWIA, Carrigan, Collins, Blackwell, Dr. Jenkins, FHJ, Dr. Frank, A.J. Frank, Health, RAH DEV, and RAH Holdings and, therefore, the FCA presentment claim is not futile. Accordingly, the court grants Plaintiffs-Relators' Motion to Amend as to their FCA Claim for presentation of false claims.

B.    FCA Conspiracy Claim

As the SAC's second cause of action, Plaintiffs-Relators allege that Defendants RAH, NWIA, Carrigan, Collins, Blackwell, Dr. Jenkins, FHJ, Dr. Frank, A.J. Frank, Twilight, RAH DEV, and RAH Holdings conspired to violate 31 U.S.C. § 3729(a)(1)(C). (ECF No. 153-1 at 41 ⁋ 132–42 ⁋ 138.) Specifically, Plaintiffs-Relators contend that "Defendants, through their concentrated efforts to carry out Defendants' fraudulent schemes to bill the Government's

healthcare program for false claims for home health care, conspired to defraud the federal government by getting false or fraudulent claims . . . allowed or paid by the Government . . . ." (*Id.* ¶ 134.)

RAH and Collins argue that Plaintiffs-Relators' FCA conspiracy claim is futile because "the proposed SAC contains no factual support for any allegations that Carrigan, Collins, Blackwell, A.J. Frank, Dr. Frank, Dr. Jenkins, NWIA, Twilight, RAH DEV, or RAH Holdings agreed with any other Defendant to get a false or fraudulent claim reimbursed by the Government, that they performed an overt act in furtherance of any such agreement, or that they shared a specific intent to defraud the Government with any other Defendant." (ECF No. 158 at 13–14.) RAH and Collins further argue that the conspiracy claim is futile as barred by the intracorporate conspiracy doctrine. (*Id.* at 14–15 (citing, *e.g.*, *U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 201 (D.D.C. 2011) (company and employees could not conspire to violate the FCA under intracorporate conspiracy doctrine)).) In response to the aforementioned, Plaintiffs-Relators assert that (1) "Defendants, minus Chase, agreed among themselves to craft and implement the scheme described in the Complaint in order to maximize the amount of reimbursement they could achieve from the Government"; and (2) the intracorporate conspiracy doctrine is inapplicable due to the exception allowing conspiracy claims against corporate officers who "benefit personally from the success of the corporation's illegal objective." (ECF No. 165 at 1920–21 (citing *Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)).)

To state a FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C), a relator must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim reimbursed by the [G]overnment, and (2) at least one act performed in furtherance of that agreement." *U.S. ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 584 (E.D.

Va. 2010) (citation omitted). "Moreover, 'a plaintiff asserting a claim under § 3729(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this end.'" *Id.* (quoting *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 665 (2008)). "The conspirators must have 'shared a specific intent to defraud the Government.'" *Id.* (citation omitted). "The particularity requirements of Rule 9(b) apply to the [FCA's] conspiracy provision with equal force as to its 'presentment' and 'record' provisions." *Health Choice All., LLC, on behalf of U.S. v. Eli Lilly and Co., Inc.*, Case No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *56 (E.D. Tex. July 25, 2018) (citation omitted). "Therefore, in order to sustain a claim for conspiracy to commit fraud, the relator must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" *Id.* (citation omitted).

Upon its review of the SAC, the court observes that Plaintiffs-Relators' allegations do not create a reasonable inference that there was an unlawful agreement between Defendants Carrigan, Collins, Blackwell, A.J. Frank, Dr. Frank, Dr. Jenkins, NWIA, Twilight, RAH DEV, or RAH Holdings to defraud the United States. *E.g.*, *U.S. ex rel. Campbell v. KIC Dev., LLC*, EP-18-CV-193-KC, 2019 WL 6884485, at *16 (W.D. Tex. Dec. 10, 2019) ("The fact that multiple people caused similar false claims to be submitted over a similar period of time 'does not, by itself, do more than point to a possibility of an agreement among them.'" (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009))). Specifically, the court observes that the SAC has general allegations regarding Defendants' alleged scheme, but lacks allegations detailing a meeting of the minds by Defendants. To this point, the court observes that the terms "agree," "agreement," and/or "meeting of the minds" are never used in the SAC. Accordingly, the court finds that Plaintiff-Relators' FCA conspiracy claim is futile and denies the Motion to Amend as to this claim.

C.     <u>FCA Retaliation Claim</u>

Plaintiffs-Relators allege in the SAC's third cause of action that each Defendant violated the FCA's whistleblower provision, 31 U.S.C. § 3730(h), by "retaliat[ing] against Plaintiff-Relators because they objected to Defendants' violations" of the FCA. (ECF No. 153-1 at 42 ¶ 141.) RAH and Collins assert that the SAC's allegations do not support a retaliation claim "[a]gainst All Defendants" and, as a result, the claim is otherwise futile except as alleged against RAH. (ECF No. 158 at 21–22.) Plaintiffs-Relators oppose the suggestion of futility asserting that they can assert an FCA retaliation claim against RAH, and also Twilight, NWIA, RAH Holdings, and RAH DEV because they "operate as a single business enterprise[,] are in fact the same corporation," and all employed Plaintiffs-Relators. (ECF No. 165 at 26.) RAH and Collins counter Plaintiffs-Relators asserting that the reference to "single business enterprise" in the SAC is a theory under South Carolina law and is not applicable in FCA cases. (*See* ECF No. 158 at 17–21.)

The FCA "prohibits retaliation 'because of lawful acts done . . . in furtherance of an action' under, or otherwise 'to stop 1 or more violations of,' the False Claims Act." *Young v. CHS Middle East, LLC*, 611 F. App'x 130, 131 (4th Cir. May 27, 2015) (quoting 31 U.S.C. § 3730(h)). "[P]laintiffs bringing an anti-retaliation suit under the False Claims Act must plausibly allege that (1) they engaged in a protected activity; (2) the employer knew about these acts; and (3) the employer discharged them as a result of these acts."[10] *Id.* (citing *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 866 (4th Cir. 1999)). "Notably, these allegations need pass only Civil Procedure Rule 8(a)'s relatively low notice-pleadings muster." *Id.* (citations omitted

---

[10] "The False Claims Act does not define employer, so courts have looked to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for guidance." *Cottone v. Kindred Rehab Servs., Inc.*, C.A. No. 2:08-3953-PMD-RSC, 2010 WL 3187052, at *2 (D.S.C. July 16, 2010). "Title VII defines 'employer' as 'a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person.'" *Id.* (quoting 42 U.S.C. § 2000e(b)).

At the outset, the court acknowledges that it was neither able to locate, nor did Plaintiffs-Relators identify, express precedent from the United States Court of Appeals for the Fourth Circuit addressing application of a single business enterprise theory[11] in the context of a FCA retaliation claim. In this regard, single business enterprise appears to be a theory of corporate integration that only has application in the state courts of South Carolina.[12] Therefore, upon its review, and after consideration of the allegations of the SAC as to an alleged single business enterprise (*see, e.g.*, ECF No. 153-1 at 12–13 ¶¶ 20–23, 16 ¶ 28, 17 ¶ 29, 18 ¶ 31), the court agrees with RAH and Collins that Plaintiff-Relators have not properly alleged FCA retaliation claims "[a]gainst All Defendants." (*See* ECF No. 153-1 at 42.) More specifically, the court finds that single business enterprise theory is not appropriate for assessing who is liable as Plaintiffs-Relators' employer under the FCA's anti-retaliation provision.[13] Accordingly, the court is inclined to only allow Plaintiff-Relators' FCA retaliation claims to proceed against RAH.

D.    FCRA Claim

As the SAC's fourth cause of action (*see* ECF No. 153-1 at 43 ¶ 149–44 ¶ 157), Plaintiffs-

---

[11] Single business enterprise theory, also called the "amalgamation of interests theory," is a principle recognized by the South Carolina Supreme Court and is defined as "where multiple corporations have unified their business operations and resources to achieve a common business purpose and where adherence to the fiction of separate corporate identities would defeat justice, courts have refused to recognize the corporations' separateness, instead regarding them as a single enterprise-in-fact, to the extent the specific facts of a particular situation warrant." *Pertuis v. Front Roe Restaurants, Inc.*, 817 S.E.2d 273, 279 (S.C. 2018). Significantly, "the single business enterprise theory requires a showing of more than the various entities' operations are intwined . . . [c]ombining multiple corporate entities into a single business enterprise requires further evidence of bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions." *Id.* at 280–81.

[12] However, federal law does recognize the principle of a single/integrated employer. *E.g.*, *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999) ("Under the 'integrated employer' test, several companies may be considered so interrelated that they constitute a single employer.").

[13] The court notes that Plaintiffs-Relators expressly allege that they were "formerly employed by Defendant RAH." (ECF No. 153-1 at 5 ¶ 12.)

Relators allege that "Defendants RAH, Collins, Carrigan, and Chase" violated the FCRA by (1) "unlawfully obtain[ing] consumer reports on Plaintiffs-Relators after Defendants were put on notice of the existence of this action"; (2) "not notify[ing] Plaintiffs-Relators that their consumer reports were being obtained"; and (3) "not obtain[ing] Plaintiffs-Relators['] consent to obtain these reports." *Id.* ¶¶ 151–153. RAH and Collins contend that Plaintiffs-Relators lack standing[14] to bring a claim under the FCRA because the "SAC alleges no concrete or particularized injury to [Plaintiffs-]Relators . . . resulting from Defendants allegedly obtaining "background screening

---

[14] "Standing 'is a threshold jurisdictional question' that ensures a suit is 'appropriate for the exercise of the [federal] courts' judicial powers.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)) (alteration in original). Rule 12(b)(1) governs motions to dismiss for lack of standing, which pertains to subject matter jurisdiction. *See CGM, LLC v. BellSouth Telecomm's, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). To establish standing, a plaintiff must show they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized[.]'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Concreteness and particularization are distinct requirements needed to satisfy the injury-in-fact element of standing. *Id.* "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "A concrete injury must be *de facto*; that is, it must actually exist" and be "real, and not abstract." *Id.* (internal marks omitted). For an injury to be concrete, it does not necessarily have to be tangible. *Id.* at 1549. For example, "an 'informational injury' is a type of intangible injury that can constitute an Article III injury in fact." *Dreher*, 856 F.3d at 345 (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998)). "However, a statutory violation *alone* does not create a concrete informational injury sufficient to support standing." *Id.* (emphasis in original); *see also Spokeo*, 136 S. Ct. at 1543 ("Article III standing requires a concrete injury even in the context of a statutory violation."). To allege a concrete informational injury, a plaintiff must allege a statutory violation and that the violation "creates a real harm with an adverse effect." *Dreher*, 856 F.3d at 345. "One cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548). As with any intangible injury, in determining whether an alleged informational injury satisfies the concreteness requirement, the Supreme Court in *Spokeo* directs courts to consider: (1) whether the injury has "traditionally been regarded as providing a basis for a lawsuit in English or American courts[;]" and (2) the "instructive and important" judgment of Congress, since Congress "is well positioned to identify intangible harms that meet minimum Article III requirements." 136 S. Ct. at 1549.

reports." (ECF No. 158 at 24.)

Under the FCRA, "[a]ny person who obtains a consumer report[15] from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater." 15 U.S.C. § 1681n(b).

Plaintiffs-Relators' FCRA claim is borne out of two (2) alleged events. First, Plaintiffs-Relators allege that on September 4, 2019, Chase requested "consumer background screening reports" on Plaintiffs-Relators from Verified First, a consumer reporting agency, under the false pretenses that the reports were needed to determine if Plaintiffs-Relators were eligible for employment with RAH. (ECF No. 153 at 37 ¶ 109–38 ¶ 10.) The only specific piece of information Plaintiffs-Relators allege was on the "consumer background report[s]" was Williford's prior administrative suspension of her driver's license in 2017. (*Id.* at 38 ¶ 116.) Second, Plaintiffs-Relators allege that, on July 31, 2020, RAH requested nursing license verifications on Plaintiffs-Relators' nursing licenses through a nurse licensure and disciplinary database also covered by the FCRA. (*Id.* ¶ 117.)

From there, Plaintiffs-Relators allege RAH, Collins, Carrigan, and Chase "shared the illegally procured consumer reports with other entities in an attempt to damage Plaintiffs[]-Relators." (*Id.* at 44 ¶ 155.) However, the only specific allegation made of any disclosure of any procured documents in the SAC states that "Carrigan wrote a memorandum to the Georgia Board of Nursing regarding Williford, alleging that Williford [] attempt[ed] to smear her reputation as a

---

[15] The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" various purposes. 15 U.S.C. § 1681a(d)(1).

nurse." (*Id.* at 38 ¶ 118.)

As a result of these alleged statutory violations, Plaintiffs-Relators insist they "have suffered and continue to suffer actual damages, emotional distress, and loss of reputation." (*Id.* at 44 ¶ 156.) Plaintiffs-Relators also contend that "[t]he FCRA creates a legally protected privacy interest in limiting dissemination of consumer reports such that impermissible disclosure constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing."[16] (ECF No. 165 at 31 (citations omitted).)

In contrast, RAH and Collins maintain that Plaintiffs-Relators lack standing to bring the FCRA claim because Plaintiffs-Relators fail to allege a concrete injury stemming from the alleged statutory violation and thus fail to show they suffered an injury-in-fact. (ECF Nos. 158 at 22–24; 167 at 9–10.) Thus, RAH and Collins argue, the FCRA claim is futile since it could not survive a motion to dismiss and assert that the court should deny Plaintiffs-Relators' attempt to amend the complaint to include the FCRA claim. (*Id.*)

District courts within this Circuit disagree whether alleging an invasion of privacy due to an FCRA violation is sufficient to satisfy the concreteness injury-in-fact requirement.[17] *Compare*

---

[16] While the proposed Second Amended Complaint does not explicitly allege an invasion of Plaintiffs-Relators' privacy, "[Plaintiffs-Relators] need not explicitly plead a claim for 'invasion of privacy' to show that their statutory right to privacy was invaded." *Witt v. Corelogic Saferent, LLC*, No. 3:15-CV-386, 2016 WL 4424955, at *13 (E.D. Va. Aug. 18, 2016).

[17] This same disagreement exists in district courts across the country. *See Robinson v. Cap. One Bank (USA), N.A.*, No. 19-cv-2275, 2020 WL 5819664, at *4 (D. Kan. Sept. 30, 2020) ("In the wake of *Spokeo*, there has been 'little consistency in the lower court cases addressing the question of standing to bring FCRA claims involving the unauthorized access of a plaintiff's credit information. Appellate guidance is scarce.'" (quoting *Browner v. Am. Eagle Bank*, 355 F. Supp. 3d 731, 733 (N.D. Ill. 2019)). *Compare, e.g.*, *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019) (holding that a plaintiff "has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by the statute, regardless whether the credit report is published or otherwise used by that third-party."); *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1338 n.7 (N.D. Ga. 2020) (concluding that "the FCRA creates a substantive right to privacy with regard to access to an individual's

*Alston v. Freedom Plus/Cross River*, No. 17-cv-33, 2018 WL 770384, at *3 (D. Md. Feb. 7, 2018) (holding that since the FCRA creates privacy rights, the invasion of which are a concrete injury, "allegations of unauthorized access to credit reports . . . inflict an injury in fact sufficient to establish standing"); *Gillison v. Lead Express, Inc.*, No. 3:16-cv-41, 2017 WL 1197821, at *7–9 (E.D. Va. Mar. 30, 2017) ("[U]nauthorized acquisitions of personal information would constitute invasions of privacy that qualify as concrete injuries sufficient to confer Article III standing."); *Witt v. Corelogic Saferent, LLC*, No. 3:15-cv-386, 2016 WL 4424955, at *12–13 (E.D. Va. Aug. 18, 2016) ("[I]t has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue."), *with Dilday v. Directv, LLC*, No. 3:16-cv-996, 2017 WL 1190916, at *4 (E.D. Va. Mar. 29, 2017) (holding that "[b]ecause the common law does not permit suit for merely sharing private information with a single third party, a violation of the FCRA's prohibition on furnishing a consumer report absent a permissible purpose cannot, standing alone, be understood to constitute a concrete injury").

---

sensitive credit information, and the impermissible disclosure of this information is more than a bare procedural violation of the Act" and collecting cases); *In re Ocwen Loan Servicing Litig.*, 240 F. Supp. 3d 1070, 1076 (D. Nev. 2017) (finding standing because "credit inquiries that exceed the scope of § 1681b(a)(3) . . . invade a plaintiff's right to privacy and result in concrete harm"); *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 874–75 (W.D. Tex. Aug. 31, 2016) (denying motion to dismiss for lack of standing because "[c]onsidering this history and Congress's judgment, the Court finds an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements"), *with Oneal v. First Tenn. Bank*, No. 4:17-cv-3, 2018 WL 1352519, at *6–10 (E.D. Tenn. Mar. 15, 2018) (granting motion to dismiss for lack of standing where plaintiff alleged invasion of privacy due to violation of § 1681b because "[a]bsent an allegation that defendant used or disseminated [plaintiff's] credit report in any harmful way—or otherwise exposed this information to a substantial risk of access by others—plaintiff has alleged an injury that is merely 'abstract,' rather than 'de facto'"); *Smith v. Ohio State Univ.*, 191 F. Supp. 3d 750, 757 (S.D. Ohio 2016) (granting motion to dismiss for lack of standing because plaintiffs alleging invasion of privacy "admitted that they did not suffer a concrete consequential damage as a result of [defendant's] alleged breach of the FCRA" and thus lacked an injury-in-fact).

The court finds the invasion of one's privacy is an intangible injury that satisfies both of the *Spokeo* concreteness considerations. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Recently, the United States Supreme Court noted the "disclosure of private information" can amount to an intangible "injur[y] with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."[18] *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (citations omitted); *see also, e.g.*, *Witt*, 2016 WL 4424955, at *12 (citing Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)); *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1337 (N.D. Ga. 2020) (collecting cases where the common law tort of intrusion was applied to a defendant illegitimately accessing personal or confidential information); *Alston*, 2018 WL 770384, at *3 ("The FCRA's restrictions on disclosure of credit reports address privacy interests that have traditionally been protected by the law.").

There is also no dispute that one of Congress's purposes in passing the FCRA was to "protect consumer privacy." *TransUnion LLC*, 141 S. Ct. at 2200 (quoting 15 U.S.C. § 1681(a)); *see also Witt*, 2016 WL 4424955, at *12 ("[O]ne of Congress' enumerated purposes in enacting the FCRA was to protect the confidentiality of consumers' personal information, thereby protecting the consumers' right to privacy." (citing 15 U.S.C. § 1681; *Trans Union Corp. v. FTC*, 81 F.3d 228, 234 (D.D.C. 1996))); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 632 (E.D. Va. 2016) ("Congress sought . . . 'to <u>prevent an undue invasion of the individual's right of privacy</u> in the collection and dissemination of credit information.'" (quoting S. Rep. No. 517, 91st Cong., 1st Sess. 2) (emphasis added in original)). "One of the means by which Congress effectuated this purpose was prohibiting the release of consumer . . . reports unless the release occurs for one of

---

[18] The Supreme Court also noted that "reputational harms" constitute injuries with common law analogues. *TransUnion LLC*, 141 S. Ct. at 2204. Plaintiffs-Relators also allege loss of reputation as a result of the FCRA violations. (ECF No. 153-1 at 44 ¶ 156.)

the permissible purposes set forth in 15 U.S.C. § 1681b(a)." *Witt*, 2016 WL 4424955, at *12

(quoting *Cole v. U.S. Cap.*, 389 F.3d 719, 725 (7th Cir. 2004)); *Thomas*, 193 F. Supp. 3d at 633

("Congress intended that the FCRA be construed to promote the credit industry's responsible

dissemination of accurate and relevant information and to maintain the confidentiality of consumer

reports."); *Alston*, 2018 WL 770384, at *3 ("[T]he FCRA's limitations on the disclosure of credit

reports are designed to protect a consumer's concrete interest in the privacy of those reports.").

Based on the foregoing, the court finds that the SAC's allegations, contending that RAH,

Collins, Carrigan, and Chase improperly procured and distributed FCRA-covered information

about Plaintiffs-Relators, constitute a concrete informational injury in the form of invasion of

privacy, amounts to more than simply a "bare procedural violation," *Spokeo*, 136 S. Ct. at 1549,

and is sufficient injury in fact to confer Article III standing. Accordingly, the court finds Plaintiffs-

Relators' FCRA claims would likely survive a motion to dismiss for lack of standing and thus are

not futile.[19]

---

[19] In a footnote, RAH and Collins contend that the documents at issue contain nothing but publicly available information, have nothing to do with Plaintiffs-Relators' credit in any way, and are not, as Plaintiffs-Relators claim, consumer reports. (ECF No. 167 at 10 n.3.) In essence, it seems RAH and Collins argue that since the documents at issue did not amount to material covered by the FCRA and were publicly available, there cannot be a concrete injury in the form of an invasion of privacy. The court views this as a factual challenge to standing, particularly since the purported credit reports at issue are not yet part of the record. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) ("In a factual challenge, the defendant argues that the jurisdictional allegations of the complaint are not true[.]") (internal marks omitted). In the context of factual challenges to standing, if the jurisdictional facts "are so intertwined with the facts upon which the ultimate issues on the merits must be resolved," the "entire factual dispute is appropriately resolved only by a proceeding on the merits." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219–20 (4th Cir. 1982)). "When facts are said to be 'intertwined,' it means that facts necessary to prove jurisdiction overlap with facts necessary to prove the merits of the case such that a 12(b)(1) motion is, essentially, an indirect attack on the plaintiff's alleged factual merits." *In re Blackbaud, Inc., Customer Data Breach Litigation*, No. 3:20-mn-02972, 2021 WL 2718439, at *5 (D.S.C. July 1, 2021) (quoting *Kuntze v. Josh Enters., Inc.*, 365 F. Supp. 3d 630, 638 (E.D. Va. 2019)). Since the question of whether the documents that were allegedly obtained constitute "consumer reports" goes directly to the merits of Plaintiffs-Relators' FCRA

E.     Personal Jurisdiction Regarding Chase

Plaintiffs-Relators allege Chase violated § 3730(h) of the FCA when she improperly procured their consumer reports, in violation of 15 U.S.C. § 1681n(b), in an attempt to harass them. (ECF No. 153-1 at 3 ¶ 4, 17–18 ¶ 30.) However, RAH and Collins argue that the SAC "fail[s] to allege any facts whatsoever that this [c]ourt has personal jurisdiction over Chase, and, thus, the proposed claim against her would be futile." (ECF No. 158 at 24.) Plaintiffs-Relators oppose RAH and Collins' arguments on the basis that as one of RAH's corporate officers, Chase "is close enough to RAH's business to be considered a party to the litigation" and "likewise has transacted the majority of her position as a RAH corporate officer in this district." (ECF No. 165 at 33 (citing *Reese v. Va. Int'l Terminals, Inc.*, 286 F.R.D. 282, 287 (E.D. Va. 2012)).)

"Where, as here, the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden of making a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs*, 886 F.2d at 676). "In doing so, however, the court need not credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320 (4th Cir. 2000)

---

claim, *see* 15 U.S.C. § 1681n(b) (conferring liability to "[a]ny person who obtains a *consumer report* from a consumer reporting agency under false pretenses or knowingly without a permissible purpose") (emphasis added), the facts here are intertwined. Thus, as "the jurisdictional allegations are sufficient on their face," the court "[will] assume jurisdiction exists[.]" *In re Blackbaud, Inc.*, 2021 WL 2718439, at *5 (quoting *Kuntze*, 365 F. Supp. 3d at 645).

(internal quotation marks omitted).

Because subject matter jurisdiction in this matter is based on a federal question, this court "applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *Korzeniowski v. NCO Fin. Syss.*, No. 3:09-cv-1399 (WWE), 2010 WL 466162, at *2 (D. Conn. Feb. 8, 2010) (quoting *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Because the FCRA does not contain a statutory provision allowing for national service of process, the court must assess personal jurisdiction over Chase under South Carolina law. *See id.* In South Carolina, the court makes a two-step inquiry. *Grober v. Mako Prod.*, Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012) (citation omitted). First, the court determines whether the exercise of jurisdiction over the party is conferred by South Carolina's long-arm statute. "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citing *S. Plastics Co. v. S. Com. Bank*, 423 S.E.2d 128, 130 (S.C. 1992)). If jurisdiction is permissible under the long-arm statute, the court then determines whether the exercise of jurisdiction under the statute comports with the provisions of the Fourteenth Amendment's due process clause. *Id.*

"There are two types of personal jurisdiction—general and specific." *Grober*, 686 F.3d at 1345. "General [personal] jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). General jurisdiction is proper where the defendant has purposefully "availed himself of the privilege of conducting [activities in the forum state]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ("[a] court may assert general

jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"Specific [personal] jurisdiction . . . must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Grober*, 686 F.3d at 1346 (Fed. Cir. 2012) (quoting *Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009)). "When analyzing specific personal jurisdiction over a nonresident defendant, a court considers whether: '(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair.'"[20] *Grober*, 686 F.3d at 1346 (quoting *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003)).

Upon its consideration of the foregoing, the court finds that Plaintiffs-Relators have failed to make a *prima facie* showing of the court's personal jurisdiction over Chase. Plaintiffs-Relators' allegations regarding Chase do not demonstrate that she had minimum contacts with South Carolina and directed her actions toward this forum. Specifically, the court observes that the SAC references Chase procuring "unauthorized investigative consumer reports" on each of Plaintiffs-Relators (ECF No.153-1 at 17 ⸿ 30), but there are no allegations regarding their connection to this

---

[20] "The plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Grober*, 686 F.3d at 1346 (citing *Elecs. For Imaging*, 340 F.3d at 1350); *see also Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) ("The first two factors [of the specific personal jurisdiction analysis] correspond with the 'minimum contacts' prong of [personal jurisdiction]. . . and the third factor corresponds with the 'fair play and substantial justice' prong of the [personal jurisdiction] analysis.") (internal citations omitted).

forum. *Cf. Smith v. Cutler*, 504 F. Supp. 2d 1162, 1167 (D.N.M. 2007) ("Personal jurisdiction can be found to exist in a forum where a non-resident defendant obtains credit reports without the permission of the resident plaintiff . . . [because] defendant's conduct in conducting the unauthorized credit inquiry is purposefully directed at the resident in the forum state, and causes injury to that individual."); *Cole v. Am. Family Mut. Ins. Co.*, 333 F. Supp. 2d 1038, 1048 (D. Kan. 2004) ("From the information required to access a credit report . . . Adler was aware that plaintiff resided in Kansas . . . [and his] actions were 'expressly aimed' at plaintiff, a Kansas resident. . . . Because this alleged injury occurred in Kansas where plaintiff resides and defendant Adler intentionally obtained plaintiff's credit report knowing plaintiff resided in Kansas, it is reasonable to conclude that defendant Adler knew his actions would have specific impact in Kansas."). In this regard, the court agrees with RAH and Collins that the SAC does not allege: (1) "that this [c]ourt has either general or specific jurisdiction over Chase," (2) "a single fact that Chase engaged in any conduct whatsoever in South Carolina," and (3) "Chase's citizenship or domicile." (ECF No. 158 at 27.) Accordingly, the court concludes that it cannot maintain personal jurisdiction over Chase and Plaintiffs-Relators' FCA claim against her is futile.

F.     Sealing Requirement

RAH and Collins assert that the SAC violates the FCA's mandatory filing requirements because Plaintiffs-Relators should have filed the proposed pleading under seal because it contains substantially new allegations. (ECF No. 158 at 28–29.) In particular, RAH and Collins point out that the "SAC's claims rely heavily on the allegations regarding RAH's actions in preparing the letters of medical necessity and obtaining payment from the DOL based on such letters," while "the Amended Complaint contains almost no mention of the letters of medical necessity or any purported actions RAH took regarding such letters[.]" (*Id.*) Further, RAH and Collins maintain

that "the Amended Complaint contains minimal information regarding purported kickbacks, whereas the proposed SAC adds some information describing items purportedly provided as kickbacks, although such allegations fail to identify various details such as most of the recipients or the circumstances surrounding the alleged kickbacks." (*Id.* at 29.) RAH and Collins likewise contend the SAC's allegations surrounding Blackwell and Carrigan raise substantively new factual allegations of wrongdoing. (*Id.*) Lastly, RAH and Collins stress "the allegation that Dr. Frank retired, took a Voluntary Medical License rather than an active license, and signed letters of medical necessity was never previously pleaded and raise issues completely separate from those addressed in prior complaints." (ECF No. 167 at 11–12 (citing ECF No. 153-1 at 15–16 ⁋ 26, 34 ⁋ 91).)

Plaintiffs-Relators counter that the SAC's allegations "merely add specificity . . . to the Amended Complaint." (ECF No. 165 at 34.) For example, Plaintiffs-Relators observe that the phrase "letters of medical necessity" appear seventeen (17) times in the Amended Complaint, and the improper preparation of such letters "has been a core allegation in this matter since the beginning." (*Id.*) Similarly, Plaintiffs-Relators claim the additional allegations related to Blackwell and Carrigan simply "add[] specifics of the bad acts" they undertook and do "not qualify as substantial change[s] in the allegations against them." (*Id.*)

*Qui tam* complaints brought under the False Claims Act "shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2). These measures allow the government time to potentially intervene in the case while also "prevent[ing] wrongdoers from being tipped off that they [a]re under investigation." *Erickson ex rel. U.S. v. Am. Inst. of Biological Scis.*, 716 F. Supp. 908, 912 (E.D. Va. 1989). Failure to follow these requirements may result in the complaint's dismissal. *Id.*

at 911–12.

Such procedures extend to amended complaints if the Government is not already on notice of the claims at issue. *See U.S. ex rel. Rush v. Agape Senior, LLC*, No. 3:13-CV-00666-JFA, 2014 WL 6910480, at *10 (D.S.C. Aug. 18, 2014) ("Because the initial complaint in *Agape I* alleged a fraudulent scheme that put the government on notice of the [general in-patient care] claims, and the government elected not to intervene, the sealing provisions of 31 U.S.C. § 3730(b)(2) were not violated."). Relatedly, the parties appear to agree an amended *qui tam* complaint should be filed under seal "when the amended complaint contains new and substantially different allegations of fraud[,]" rather than simply adding "specificity to the allegations in the original complaint." (ECF No. 165 at 34 (citing *U.S. ex rel. Davis v. Prince*, 766 F. Supp. 2d 679, 682. (E.D. Va. 2011))); (*see* ECF No. 158 at 27–28).

Here, the court finds Plaintiffs-Relators were not required to file the SAC under seal because the alleged underlying conduct therein is substantially similar to the allegations within the Amended Complaint. Nine (9) of the eleven (11) Defendants the SAC incorporates were parties to the Amended Complaint before the court dismissed them. Plaintiffs-Relators likewise seek to reincorporate claims previously filed under seal and dismissed by the court. The crux of Plaintiffs-Relators' allegations concerning the underlying conduct has not substantially changed; instead, Plaintiffs-Relators have simply added numerous allegations by, *inter alia*, significantly expounding the involvement of letters of medical necessity, the scheme involving alleged kickbacks, the behavior of Blackwell and Carrigan, and how Dr. Franks purportedly violated the False Claims Act due to his voluntary medical license. Such allegations do not substantially alter Defendants' underlying conduct regarding Plaintiffs-Relators' allegations of FCA violations. *See Va. ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.*, No. 1:13-CV-1129 GBL/TCB, 2014 WL

1928211, at *5–6 (E.D. Va. May 13, 2014) (explaining differing theories of Defendants' culpability in the Complaint and proposed Amended Complaint were "based on the same underlying conduct—LabCorp charging [the Department of Medical Assistance Services] at rates above those charged to non-Medicaid customers. By sealing the original Complaint, Relators gave the Commonwealth an opportunity to investigate whether such conduct violated Commonwealth laws and regulations"). Accordingly, the court concludes that Plaintiffs-Relators were not required to file the proposed SAC under seal.

## V.    CONCLUSION

After careful consideration, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs-Relators' Motion to Amend First Amended Complaint (ECF No. 153) and **INSTRUCTS** Plaintiffs-Relators to file a Second Amended Complaint by Friday, October 8, 2021, which pleading should incorporate the following claims as stated herein: (1) a FCA presentment claim against Defendants RAH, NWIA, Carrigan, Collins, Blackwell, Dr. Jenkins, FHJ, Dr. Frank, A.J. Frank, Health, RAH DEV, and RAH Holdings; (2) a FCA retaliation claim against RAH; and (3) a FCRA claim against RAH, Collins, and Carrigan.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 27, 2021
Columbia, South Carolina